Teresa Anna **GOLABEK**

v.

**REGIONAL MANPOWER ADMINIS-TRATION, UNITED STATES DE-PARTMENT OF LABOR.**

Civ. A. No. 70–2231.

United States District Court,
E. D. Pennsylvania.

June 30, 1971.

Faith R. Whittlesey, Asst. U. S. Atty., on briefs for plaintiff.

Franklin Abrams, New York City (Jerome Zaleski, Philadelphia, Pa., with him on brief), for defendant.

## MEMORANDUM AND ORDER

DITTER, Judge.

This case is before the court on cross motions for summary judgment. The sole issue raised is whether or not the Secretary of Labor through the Regional Manpower Administrator acted arbitrarily in denying a labor certification to an alien. We find that he did.

Plaintiff, Teresa Ann Golabek, is a twenty-three year old citizen and native of Poland. She entered this country as a non-immigrant student on January 8, 1964, completed high school, and then received a degree from Holy Family College in 1969. Subsequently, she began teaching art at Cardinal Dougherty High School in Philadelphia, where she had previously been a student-teacher.

On April 22, 1970, the Department of Labor received plaintiff's application for a labor certification as a secondary school teacher.[1] She was to teach art at Cardinal Dougherty High School for $5800. a year. The school indicated to the Department of Labor that it had sought others for the job but that none were available. The Department, acting through the Regional Manpower Administrator,[2] determined that there were other qualified American applicants available and that the plaintiff's wage

---

1. A labor certification is required of all aliens who desire to enter or permanently remain in the United States for the purpose of employment. See 8 U.S.C. 1182(a) (14).

2. It is the duty of the Regional Manpower Administrator of the United States Department of Labor to determine whether such a certification should be granted.

offer fell below the prevailing wage scale paid to Philadelphia *public* school art teachers. Subsequently, plaintiff's employer was notified that a labor certification could not be issued because (1) available job market information would not warrant a certification of unavailability of United States workers at the prevailing wage in the Philadelphia area and (2) employment at substandard wages would have an adverse effect on United States labor.

On May 1, 1970, the vice principal of the high school requested the Regional Manpower Administrator to reconsider plaintiff's application, but on May 11, it was again denied. Plaintiff's employer informed the Administrator on July 21, that further attempts to hire a qualified art teacher had been unsuccessful, and reconsideration of the application was again requested. On August 7, the Administrator reaffirmed his previous denial and eleven days later plaintiff filed the present action.

The court's initial finding must be whether it has jurisdiction to review a determination relegated to the Secretary of Labor. The government urges we do not but concedes that there is a practice of assuming jurisdiction *arguendo* so that a determination can be reviewed on its merits. Previous cases have not squarely decided this problem. However, several have held that there is a general tendency to favor judicial review of administrative action which is especially powerful in immigration and naturalization cases. Estrada v. Ahrens, 296 F.2d 690 (5th Cir. 1961), involved the excluding of an alien who was in possession of a visa. The court stated that the effect of the Administrative Procedure Act and the Immigration Act was to make available judicial review of agency action relating to immigration. It then found that a court of law was the proper place to test unauthorized administrative power. Hom Sin v. Esperdy, 239 F.Supp. 903 (S.D.N.Y.1965), held that a denial of consideration would run counter to the liberal policy of judicial review which does exist.

■ Once a court assumes jurisdiction, its scope of review is limited to determining whether there has been an abuse of discretion or whether statutory authority has been exceeded. In Blazina v. Bouchard, 286 F.2d 507 (3rd Cir. 1961), which involved an application for a stay of deportation, the court stated that an application may not be denied arbitrarily or capriciously or for reasons which evince a complete disregard of the law and the facts. The United States Supreme Court has long held that in exclusion cases involving an alien's attempt at entry, decisions of administrative officers, acting within powers expressly conferred upon them by statute, must conform fully to constitutional requirements of due process: United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317 (1950). The courts in such instances will make no de novo findings of fact and no full judicial review of the factual issues is permitted: Flower Furniture Manufacturing Corp. v. Esperdy, 229 F. Supp. 182 (S.D.N.Y.1962).

■ An administrative decision based upon erroneous legal standards cannot stand: SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). A denial of any review would leave petitioner helpless and subject to deportation despite the possible merits of the underlying case.

■ Accordingly, we find that this court has jurisdiction to review the findings of the Secretary of Labor made pursuant to § 212(a) (14) of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1182(a) (14), but that that review is limited to determining whether the Secretary abused his discretion or committed an error of law.

Section 212(a) (14) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a) (14) provides:

(a) * * * the following classes of aliens shall be ineligible to receive

visas and shall be excluded from admission into the United States:

(14) aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

With respect to the Administrator's finding that available job market information would not warrant a certification of unavailability of United States workers at the prevailing wage in the Philadelphia area, plaintiff contends that the Department of Labor has failed to recognize that the market for Catholic school teachers differs from that of public school teachers.

■ The facts of record reveal that the Administrator contacted Temple University and the Moore College of Art and found that there were qualified applicants seeking employment in the field of art education in the Philadelphia area. However, only three prospective teachers were interviewed by the Archdiocese lay personnel director. None of the three after discussing the job conditions were interested enough to supply the customary transcripts or letters of recommendation. Although the Administrator's investigation revealed that qualified job applicants were available,

there is nothing to indicate that anyone other than petitioner, was interested in the Archdiocesan vacancy. The government in its brief states that the Secretary of Labor's concern has been with shortages or surpluses of labor in various occupations, geographic distribution of such conditions and whether the applicant will likely displace an American worker. There are no facts present on the record which indicate to us that petitioner is likely to displace any American worker. In addition, although the Administrator found that there might be qualified and available applicants, there is nothing to indicate that those applicants would be "able and willing" to work for the Archdiocese.

■ Plaintiff next maintains that the Administrator abused his discretion in stating that her employment at "substandard wages" would have an adverse effect on United States labor. She is correct. The wage being paid to this alien is not substandard but is exactly that which her colleagues, lay teachers employed by the Archdiocese of Philadelphia, receive. These lay teachers are paid pursuant to a contract duly bargained and agreed to by the Archdiocese and the Association of Catholic Teachers, Local 1776 of the American Federation of Teachers, AFL–CIO.

The government contends that the Secretary of Labor has the discretion to determine the *prevailing* wage rate for certain classifications of labor in a particular area.[3] If the Secretary then finds that anyone is working for less than the prevailing rate, the issuance of a labor certificate to an alien should be deemed to be adverse to the interest of American labor.

The Secretary's error, however, is with the term, "classification." The

3. Where available, such prevailing wages shall generally be the rates determined to be prevailing for the occupations and in localities involved pursuant to the provisions of the Acts set forth in 29 C.F.R. § 60.6(a).
Where a current determination under one of these laws is not applicable the

prevailing wage rate is determined in accordance with the criterion established pursuant to the Davis-Bacon Act which provides:
* * * the rate of wages paid in the area in which the work is to be performed, to the majority of those employed in that classification * * *

wage scale of teachers in the Philadelphia public schools cannot be placed in the same group as that for teachers in Philadelphia's parochial schools. The classroom and school situation is different and there may be any number of reasons why a teacher would prefer to work in one school system rather than the other.

To affirm the decision of the Regional Manpower Administrator would be in effect to censure the entire Archdiocesan wage scale and to say that it is below the prevailing rate. The difference in salary between public and Catholic school teachers at the time suit was instituted was only $900. In addition, the wage scale is considered satisfactory to the labor union, the general public, and the teachers themselves. In light of those circumstances censure would be unwarranted. Nor is there any reason in this particular instant to deem petitioner's wages to be substandard.

We conclude therefore that the Secretary of Labor, acting through the Regional Manpower Administrator acted arbitrarily in denying a labor certification to petitioner. Accordingly, the government's Motion for Summary Judgment will be dismissed and plaintiff's countermotion will be granted.