**ACUPUNCTURE CENTER OF WASHINGTON and Yann Theresa Kao, Plaintiffs,**

**v.**

**Peter J. BRENNAN, Secretary of Labor, and Lorenzo M. White, Acting Director, Office of Employment Services, Defendants.**

**Civ. A. No. 635–73.**

United States District Court,
District of Columbia.

Oct. 5, 1973.

Howard Esterces, New York City, admitted pro hac vice, for plaintiffs.

Richard I. Chaifetz, Atty., Dept of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before the Court on cross-motions for summary judgment.

The dispositive issue which must be decided is whether the Secretary of Labor, acting through the Regional Manpower Administrator, abused his discretion in denying a labor certification to the plaintiff who is an alien. The Court finds that the defendants did indeed abuse their discretion.

Plaintiff, Yann Theresa Kao,[1] a national of the Republic of China, was born in mainland China in 1941 and after completing her undergraduate studies at Providence College in Taichung, Taiwan, entered the United States as a non-immigrant student on January 1, 1970.[2] Two years later, in May of 1972, Ms. Kao received her Master of Science Degree in Business Administration from Fort Hayes Kansas State College, Hayes, Kansas. During the course of her studies the plaintiff became fluent in three Chinese dialects, Cantonese, Mandarin, and Shanghai, and is proficient in the translation of these dialects from English to Chinese and Chinese to English.

After receiving her degree from Fort Hayes Kansas State College, Ms. Kao began work as an interpreter for the Acupuncture Center now located in Washington,[3] D. C. The Acupuncture Center employs five Chinese acupuncturists under the supervision of four American medical doctors. To assist these Chinese acupuncturists in what is a comparatively new technique of medical treatment in this country, the Center has on its staff approximately fifteen Chinese females, of which Ms. Kao was one.[4] The duties of these interpreters include the translation from English to Chinese or Chinese to English between the acupuncturist and his patient during the course of treatment, thus aiding in the identification of the ailment of the

---

1. In addition to Ms. Kao, the Acupuncture Center of Washington, Ms. Kao's present employer and a prime movant in seeking certification for its employee, is also a plaintiff in the action.

2. Ms. Kao received her B.A. Degree from Providence College in 1967 where she studied bookkeeping, English literature and history, and aided in the translation of Chinese into English or English into Chinese. Letter of Sister Agnes Joan of Providence College,

January 10, 1973, Administrative Record at 17.

3. Between July, 1972, and December, 1972, Ms. Kao worked in the Acupuncture Clinic of New York as an interpreter after which she became an employee of the Acupuncture Center of Washington.

4. Affidavit of Mr. Charles Newmark, Administrative Director of the Acupuncture Center of Washington at 1.

patient and communication of these medical problems between patient and acupuncturist. Such communication necessarily includes the use of medical terminology of which Ms. Kao has considerable knowledge due to her tenure as an interpreter.[5]

On January 22, 1973, the Acupuncture Center filed a labor certification with the Department of Labor.[6] The job description required a person capable of interpreting from various dialects of Chinese into English and a person capable of performing all of its bookkeeping. The Certifying Officer found that the "available job market information will not warrant a certification of unavailability of workers in the United States" and further ruled that the job requirements were too restrictive.[7] In response to this denial, the Acupuncture Center requested reconsideration and deleted the requirement of bookkeeping skills while noting the importance of Ms. Kao's understanding of acupuncture terminology and science.[8]

Plaintiffs' request for reconsideration was rejected by Lorenzo White, Acting Director of Employment Services of the District of Columbia Manpower Administration. Mr. White stated that the amendment of the application had removed the factors creating the adverse effect as a basis for denial, but he went on to indicate that

> . . . we must conclude that sufficient resident workers remain available in the Washington Metropolitan Area to perform the job duties required. While we recognize that you may prefer workers who are familiar with acupuncture terminology and practice, this does not appear to be a necessary occupational consideration and only impedes effective recruitment of an otherwise qualified local worker.[9]

The underlying basis for Mr. White's conclusion that "sufficient resident workers remain available" is revealed in a letter from Mr. White to Robert Pfeffer, Assistant Solicitor of Labor for Manpower, in which Mr. White notes that in processing the initial application, contact was made with Mr. Winston Tsai, legal counselor to the D. C. Chinese Cultural Association and the Formosan Club of America, Incorporated. Mr. Tsai informed defendants that to his knowledge there were in excess of 15 persons in the area who "possessed knowledge of English and various Chinese dialects."[10] Furthermore, Mr.

---

5. It is significant that the five Chinese acupuncturists have "limited or no fluency in English," thus increasing the importance of a competent translator in this medical setting. Affidavit of Charles Newmark at 2.

6. A labor certification is required of all aliens who desire to enter or permanently remain in the United States for the purpose of employment pursuant to 8 U.S.C. § 1182(a)(14). This section provides in part:
(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) There are not sufficient workers in the United States who are *able, willing, qualified, and available* at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed . . . . (Emphasis added).

7. Finding of Flora Richardson, Certifying Officer, Administrative Record at 13.

8. Letter of counsel for plaintiff to Lorenzo White, Director of Employer and Technical Services, D. C. Manpower Administration, February 21, 1971, Administrative Record at 6.

9. Letter of Lorenzo White, March 8, 1973, to Stephen M. Warner, Administrative Record at 3.

10. Letter of Lorenzo White to Robert Pfeffer, March 20, 1973, Administrative Record at 1.

Tsai indicated two applicants were available for immediate referral, one of whom spoke the three Chinese dialects described as a job requisite by the Acupuncture Center.[11] Mr. Tsai indicated that he would forward a letter advising of the availability of these two applicants. Plaintiff at oral argument indicated no such referral was made.

An additional contact with Mr. Fukuda of the Language Services Division of the Department of State revealed that Mr. Fukuda could refer two applicants with a fluency in Mandarin Chinese but Mr. Fukuda felt "it would be difficult to locate interpreters with fluency in three dialects." [12]

Within this factual setting, the question is now presented to the Court whether the Secretary abused his discretion in denying a labor certification to plaintiffs.[13] The plaintiffs argue that under 8 U.S.C. § 1182(a)(14) [14] the Secretary failed to make a reasonable and complete determination that sufficient resident workers are able, willing, qualified, and available to perform the labor required by the employer. After a careful review of the administrative record before the Court, it is clear that plaintiffs' argument has much merit. Not only was it clear from the facts gathered that there were very few resident workers who had a sufficient knowledge of three Chinese dialects [15] but, in addition, it is evident that the contact with Mr. Winston Tsai of the Chinese Cultural Association produced only speculation as to whether there were resident workers who, in fact, were "able, willing, qualified and available."

A similar situation was presented in the case of Golabek v. Regional Manpower Administration, United States Department of Labor, 329 F.Supp. 892 (E. D.Pa.1971). In *Golabek* a labor certification was denied to plaintiff on the grounds, *inter alia,* that there were qualified resident applicants seeking employment in this same field of art education. The Court noted that

> Although the Administrator's investigation revealed that qualified job applicants were available, there is nothing to indicate that anyone other than petitioner, was interested in the Archdiocesan vacancy . . . . There are no facts present on the record which indicate to us that petitioner is likely to displace any American worker. In addition, although the Administrator found that there might be qualified and available applicants, there is nothing to indicate that those applicants would be 'able and willing' to work for the Archdiocese.

329 F.Supp. at 895.

This Court is met with an equal, if not more egregious, lack of facts in the record to support the Secretary's finding. There is nothing to show the workers to whom Mr. Tsai referred were willing and able to work for the Acupuncture Center nor was there any indication at all that any of these applicants had a familiarity of acupuncture terminology and science or spoke three Chinese dialects.

The government argues that a knowledge of acupuncture medical terminology is not necessary for this position since it

11. *Id.* at 2.

12. *Id.*

13. The courts have almost uniformly limited their review in similar cases involving the classification of aliens to a determination whether, upon review of the administrative record, there has been an abuse of discretion. Song Jook Suh v. Rosenberg, 437 F. 2d 1098, 1102 (9th Cir. 1971); Asuncion v. District Director, 427 F.2d 523 (9th Cir. 1970). *See also* Golabek v. Regional Man-

power Adm'n, United States Dept. of Labor, 329 F.Supp. 892 (E.D.Pa.1971); Yau v. District Director of United States Immigration and Naturalization Service, 293 F.Supp. 717 (C.D.Cal.1968).

14. See note 5.

15. As noted previously, Mr. Fukuda of the State Department indicated it would be difficult to locate interpreters with a fluency in three dialects.

can be learned as part of the on-the-job training.[16] It is clear to this Court that in the sensitive setting of medical practice and all the concomitant problems that arise in the course of treatment of the elderly and disabled persons seeking such treatment, it is not unreasonable for an employer to not only desire, but also require, that its employee have familiarity with the terminology. Therefore, in not considering this factor as to whether there were "able, willing, *qualified*, and available" applicants, the Secretary abused his discretion (emphasis added).

Similarly, the government's objection to the three Chinese dialects requirement for the position is equally unreasonable. This objection was articulated by Mr. Lorenzo White, the Reviewing Officer:

> In addition, the clientele to be served by such an establishment in this community must be primarily English speaking. Consequently, the Chinese language requirements are apparently identified as a necessary requirement to communicate with the practitioners. Assuming that the practitioners communicate with each other in one or two common dialects, it is difficult to understand the requirement for numerous Chinese dialects as a necessity. The letter of reconsideration did not sufficiently address this situation to the satisfaction of the Department of Labor for certification of an alien worker.[17]

Mr. White's objection does not appear to this Court to be well taken. The Acupuncture Center's desire to employ an interpreter who is fluent in all three dialects is certainly understandable in light of the need of the acupuncturist for clear and immediate interpretation of the patients' ailments without having to search for one interpreter who may speak his dialect. Every employer is entitled to hire persons who have qualifications that can be utilized in a manner that will contribute to the efficiency and quality of the business. In this regard, three Chinese dialects is not an unreasonable job requisite for an interpreter in an organization that is centered on the skills of five Chinese acupuncturists who have limited or no fluency in English.

The denial of a labor certification on the facts presented to this Court clearly does not further the "primary purpose of the labor certification procedure . . . to protect the American labor market and to prevent depression of wages and working conditions." Ozbirman v. Regional Manpower Administrator, United States Department of Labor, 335 F.Supp. 467, 471 (S.D.N.Y.1971).[18] Plaintiff has maintained, and the record shows,[19] that the plaintiff Acupuncture Center made reasonable attempts through newspaper advertising and other means to find resident workers for this position. Therefore, since there was no sufficient factual foundation for the Secretary to find that there were resident workers "able, willing, qualified and available," to meet the job requirements found reasonable by the Court, it can only be concluded that defendants in this case did abuse their discretion.

Pursuant to the facts and conclusions cited herein, this case is remanded to the Secretary of Labor for further proceedings not inconsistent with this Memorandum.

16. Letter from Lorenzo White to Robert Pfeffer, April 20, 1973, Administrative Record at 2.

17. *Id.*

18. *See* Digilab, Inc. v. Secretary of Labor, 357 F.Supp. 941 (D.Mass., 1973). In *Digilab*, the U. S. District in Massachusetts, per Judge Frank Freedman, wrote concerning the "able, willing" requirement:

> The record does not reveal that the Manpower Administration made a determination that there were those who were willing and able to accept a job with Digilab. The fact that the National Registry for Engineers lists only two hundred possible qualified engineers in the entire country available for the job in question does not in this court's eyes establish a necessary record of sufficient workers in the United States who are 'qualified,' 'available,' 'able,' and 'willing.'

19. Administrative Record at 9.