Angela **RATNAYAKE** and the Town and Country Montessori School, Appellants,

v.

Anita **MACK**, Regional Certifying Officer, Manpower Administration, U. S. Department of Labor, Appellee.

Chandrika **JAYASEKERA** and the Highland Park Montessori School, Appellants,

v.

Anita **MACK**, Regional Certifying Officer, Manpower Administration, U. S. Department of Labor, Appellee.

Nos. 73-1865, 73-1866.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1974.

Decided June 12, 1974.

Rehearings and Rehearings En Banc Denied Aug. 13, 1974.

John F. Niemeyer, W. St. Paul, Minn., for appellants.

Stephen G. Palmer, Asst. U. S. Atty., Minneapolis, Minn., and Richard J. Fiore, Atty. Dept. of Labor, Washington, D. C., for appellee.

Before GIBSON, BRIGHT and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

The issues to be resolved on this appeal are whether the district court had jurisdiction to review the Secretary of Labor's denial of labor certification under 8 U.S.C. § 1182(a)(14) (1970) and, if so, did the Secretary[1] abuse his discretion in denying certification in this case.

Appellants Ratnayake and Jayasekera are alien Montessori school teachers who have entered the United States from Ceylon as temporary non-immigrant exchange visitors pursuant to 22 U.S.C. §

1. The determination as to whether labor certification should be granted or not has been delegated by the Secretary of Labor to a Certifying Officer appointed by the Regional Manpower Administrator of the Manpower Administration of the Department of Labor. 29 C.F.R. § 60.4 (1973).

2451 et seq. (Supp.1974). During this period, appellant Ratnayake taught at appellant Town and Country Montessori School in Richfield, Minnesota. Appellant Jayasekera was employed by appellant Highland Park Montessori School located in St. Paul, Minnesota. Appellant schools subsequently decided to attempt to retain appellant teachers beyond the two-year period that they were then allowed to stay under the exchange-visitor program. In order to obtain immigrant visas for permanent residence, the schools were required to file, on behalf of appellant teachers, a request for a sixth preference visa from the Attorney General.[2] 8 U.S.C. § 1153(a)(6) (1970). This visa is granted to certain qualified immigrants who desire to perform skilled or unskilled labor for which a shortage of "employable and willing persons exists in the United States." The Attorney General is unable to issue the sixth preference visa until he receives a proper labor certification from the Secretary of Labor. Certification is not to be granted unless the Secretary finds that:

> (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. * * * 8 U.S.C. § 1182(a)(14) (1970).

Appellants filed all of the certification application forms that are required by 29 C.F.R. § 60.1 et seq. (1973). Appellant teachers were informed of the denial of labor certification by the receipt of a form letter from appellee which contained merely a mark beside a sentence specifying that "United States workers are available for this occupation." In addition, appellant Jayasekera was denied certification because it was asserted that her wage offer was below the prevailing wage scale.

Appellants commenced this suit requesting that the certification denials be set aside. The trial court, after a hearing, remanded the matter to the Secretary of Labor for further documentation and amplification of the basis for appellee's determination. The Secretary reaffirmed the certification denials and submitted additional material to support his conclusion. The trial court, after reviewing this material, granted appellee's motion for summary judgment. 365 F. Supp. 954 (D.Minn.1973). This appeal followed.

■ Our initial inquiry is whether the trial court properly concluded that it had jurisdiction of the case. Although the Immigration and Naturalization Act fails to explicitly provide for judicial review of the Secretary of Labor's denial of labor certification, this does not indicate that judicial review of that determination was intended to be unavailable. Association of Data Processing Service Org., Inc. v. Camp, 397 U.S. 150, 156–157, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Judicial review may still be available pursuant to section 10 of the Administrative Procedure Act, 5 U.S.C. § 701 (1967), which provides that such review is available except to the extent that:

> (1) statutes preclude judicial review; or

> (2) agency action is committed to agency discretion by law.

Appellee alleges that the latter exclusion is applicable to the present case in that the Secretary of Labor has been statutorily vested with the discretionary power to grant or deny labor certification under section 1182(a)(14), and thus his decision is not judicially reviewable. Based upon recent decisional law, as well as the import and applica-

---

2. The Attorney General has delegated his powers and responsibilities in this area to the Commissioner of Immigration and Naturalization. 8 C.F.R. § 2.1 (1973).

tion of section 1182(a)(14), we cannot agree.

It must be recognized at the outset that judicial review is the rule, not the exception, and nonreviewability is "not lightly to be inferred." Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the Court stated that the preclusion of judicial review for action committed to agency discretion by law is "a very narrow exception." *Id.* at 410. Judicial review should be disallowed only in those "rare instances" where the "statutes are drawn in such broad terms that in a given case there is no law to apply." *Id.* at 410, *quoting from* S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945).

In *Overton Park*, the Secretary of Transportation was required by the Department of Transportation Act and the Federal-Aid Highway Act to disapprove any highway plan affecting public parkland unless it was shown that no alternate plan was feasible and all harm to the park was minimized. The Court held that there was plainly "law to apply" because the Secretary was required by statute to consider factors such as cost, disruptive effect in the area and directness of route in making his determination. Therefore, judicial review of his decision was available.

■ In 8 U.S.C. § 1182(a)(14), the Secretary of Labor is required to ascertain the status of the labor market in a

particular occupation, the number of American workers willing and able to work, the extent to which such workers are available and qualified for a particular job, and the prevailing wage scale for workers similarly situated. These factors must all be considered when the Secretary is preparing to rule upon a labor certification application. As in the *Overton Park* case there is obviously "law to apply" under these circumstances, and thus the Secretary's determination is not "committed to agency discretion by law." We hold that the trial court properly assumed jurisdiction of this case. Our conclusion is supported by similar holdings of the First, Fifth and Seventh Circuits. They have recently held that the Secretary's denial of labor certification is judicially reviewable under similar circumstances. Digilab, Inc. v. Secretary of Labor, 495 F.2d 323 (CA1 filed March 22, 1974); Reddy, Inc. v. United States Department of Labor, 492 F.2d 538 (CA5 filed April 10, 1974); Secretary of Labor v. Farino, 490 F.2d 885 (CA7 1973).[3] *See also,* Mendez v. Major, 340 F.2d 128 (CA8 1965).

The determination reached by the Secretary is not to be set aside unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1967). The trial court's "inquiry into the facts [before the Secretary] is to be searching and careful" and it must overturn the findings and

3. A number of district courts have also held that judicial review is available upon the Secretary's denial of labor certification. First Girl, Inc. v. Regional Manpower Administrator, 361 F.Supp. 1339, 1340 (N.D. Ill.1973); Wang v. Regional Manpower Administrator, 352 F.Supp. 260, 261 (N.D.Ill. 1972); Bitang v. Regional Manpower Administrator, 351 F.Supp. 1342, 1344 (N.D. Ill.1972); Ozbirman v. Regional Manpower Administrator, 335 F.Supp. 467, 470–471 (S.D.N.Y.1971); Golabek v. Regional Manpower Administration, 329 F.Supp. 892, 894 (E.D.Pa.1971).

Appellee relies on Braude v. Wirtz, 350 F.2d 702 (CA9 1965) and Cobb v. Murrell, 386 F.2d 947 (CA5 1967) in which those courts held that judicial review of the Secretary's denial of labor certification was not avail-

able. However, those cases are distinguishable from the present case. In *Braude* and *Cobb*, the alien applicants were not parties to the law suit and were not actually present in the United States. The action was commenced on behalf of the aliens by their prospective employers. The *Braude* court stated that it was "unable to discover a case * * * wherein aliens *in these circumstances* have been granted judicial review." Braude v. Wirtz, *supra*, 350 F.2d at 706 (emphasis added). The Fifth Circuit has recently limited the *Cobb* case to its specific facts while allowing judicial review by an alien who was a party to the action and a lawful resident of the United States, as are the appellants in the present case. Reddy, Inc. v. United States Department of Labor, 492 F.2d 538 (CA5 filed April 10, 1974).

conclusions of the Secretary if they are not "based on a consideration of the relevant factors and \* \* \* there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971); *accord* Secretary of Labor v. Farino, 490 F.2d 885, 889–890 (CA7 1973).

Appellant teachers, natives of Ceylon, have been trained in the Montessori method[4] at a Ceylon training center which operates under the auspices of the Association Montessori Internationale (A.M.I.). At the conclusion of the two-year training program, each was certified by the A. M. I.

Appellant schools, both of which are affiliated with A. M. I., have made a policy decision that A. M. I. certified teachers are better trained and qualified, and thus can conduct Montessori classes more effectively. Therefore, both schools have concluded that preference will be given to A. M. I. certified teacher applicants when a teaching vacancy arises. Due to the pronounced shortage of American A. M. I. certified teachers, appellant schools were forced to offer employment to aliens, such as appellants Ratnayake and Jayasekera, who had received their A. M. I. certification in foreign countries.

The reasons posited by the Secretary for denying labor certification to appellant teachers were that there is a surplusage of unemployed and underemployed college-educated American teachers; that these American teachers could, with a minimum of training, perform the employment functions that appellant teachers had applied for; that the job requirements established by appellant schools were unreasonable and unduly restrictive; and that disregarding the unreasonable job requirements, there were sufficient American teachers who were able, willing, qualified and available for the jobs.

In comparing the Montessori method with the more traditional method of education, there are obvious dissimilarities.[5] Since each takes a different approach to education, the training and skills of a teacher for one is not necessarily compatible with those needed and utilized in the other. Mr. S. P. Marland, Jr., a former United States Commissioner of Education, characterized a Montessori teacher as follows:

> [S]uch a person is a specialist in the Montessori approach to child development "with a detailed knowledge of Montessori psychology and theory." This includes background in the use of certain materials which aid in the development of cognitive skills along with physical and emotional development. The heavy emphasis on use of materials is one of the chief differences between Montessori-trained teachers and conventionally-trained American teachers.[6]

Mr. Marland's successor as United States Commissioner of Education acknowledged that the lengthy and exten-

4. The Montessori method of education originated in Italy and its growing acceptance is a recent phenomenon in the United States. The genesis of its current popularity was approximately ten years ago. This method emphasizes the need for the young child to be given sufficient freedom to learn from the environment and from the use of different materials in the classroom. It is a shift away from the "teacher-centered" approach adhered to in the traditional educational method, and encourages self-knowledge and self-discipline by the child. A number of the Montessori schools are affiliated with either the American Montessori Society (A.M.S.) or the Association Montessori Internationale (A.M.I.). Both the A.M.S. and the A.M.I. have established training centers which enable them to teach the Montessori method to prospective teachers and certify them at the conclusion of the training period. There have been twelve to fifteen Montessori training centers established in the United States in the past ten years, including one at St. Paul, Minnesota.

5. *See note 4, supra.*

6. Quotation from a letter dated June 26, 1972, from the Commissioner to the Assistant Secretary for Manpower, U. S. Department of Labor (part of the file certified by the government and filed herein).

The Commissioner made the additional comment: "Without committing myself to the Montessori method, I would admit that the demand for traditionally trained Montessori teachers exceeds the supply available in the United States."

sive training period required for A. M. I. certification was "reasonable" since the Montessori method "is different from the traditional American approach."[7]

In reviewing the job requirements established by appellant schools, the mere fact that the prerequisite for employment is a lengthy and extensive training period does not automatically give the Secretary the power to disregard them as unreasonable. There must be some deference accorded employment qualifications for "[e]very employer is entitled to hire persons who have qualifications that can be utilized in a manner that will contribute to the efficiency and quality of the business." *Acupuncture Center of Washington v. Brennan*, 364 F.Supp. 1038, 1042 (D.D.C.1973). In *Acupuncture Center*, the court held that it was not unreasonable for the employer to demand that applicants speak three dialects of Chinese as well as have an understanding of acupuncture terminology and science. The First Circuit has recently asserted that the Secretary "should not have the privilege of determining the qualifications of any particular applicant for the job to be filled. Nor without proof, should he have the right to attack the good faith of an employer's personnel procedures." *Digilab, Inc. v. Secretary of Labor*, 495 F.2d 323, at 326 (CA1 filed March 22, 1974). The job requirements of an employer are not to be set aside if they are shown to be reasonable and tend to contribute to or enhance the efficiency and quality of the business.

Due to the unique and specialized approach to education adopted by Montessori schools, as well as the training necessary to learn the skills that will enable one to operate effectively as a Montessori teacher, it is not unreasonable for a school to require applicants to have undergone an extensive and lengthy training program. The A. M. I. certification program, which often extends for two years,[8] is not unnecessarily or unreasonably long. A Montessori school may validly conclude that a short training period (i. e., six weeks as suggested by the Secretary) is insufficient to teach an individual the academic and practical aspects of the Montessori method. It is our view that a Montessori school may reasonably establish job qualifications that require all applicants to have the *equivalent* of training required by A. M. I. or A. M. S. training centers.

However, it appears that appellant schools' job requirements are unreasonable to the extent that they consider *only* A. M. I. certified teachers and disregard all other applicants with comparable or superior training. If an American A. M. S. certified teacher has applied for the position, an alien with A. M. I. certification should not displace her merely because certification was obtained from different certifying bodies.[9]

---

7. In a letter received by the Assistant Secretary of Manpower on November 7, 1972 (contained in official file), John Ottina, Acting U. S. Commissioner of Education, wrote: From what I know of the Montessori method, the AMI standards for certification of their schools, teachers, and teacher trainers are reasonable. Their approach is different from the traditional American approach, yet diversity in educational philosophy is a hallmark of American education.
In the same letter, the Commissioner stated: There is no question in my mind that the shortage of Montessori teachers and trainers is critical, even more critical than the shortage of regular teachers in the field of early childhood education.

8. The record indicates that certain A.M.I. training centers take into consideration the preliminary education of their trainees. The curriculum may allow an individual with a B.A. degree or its equivalent to complete the training course in ten months. Individuals without a college degree will be required to undertake the two-year training period.

9. The occasion may arise where the training period equivalent to that now required by A.M.I. or A.M.S. may be administered so inadequately that only ill-trained and unprepared Montessori teachers are produced. The posture of this case does not require us to resolve whether an employer must accept a "certified" teacher from such a training center. The record does not indicate whether there are training centers, other than A.M.I. and A.M.S., which require such an extensive training period.

While we recognize the right of an employer to establish reasonable training periods and educational requirements as a prerequisite to employment, applicants who satisfy these requirements should be given equal consideration.[10]

■ We conclude that the Secretary of Labor did not abuse his discretion in determining on the record available that the requirement that applicants at appellant schools must have A.M.I. certification was an unreasonable and unduly restrictive job requirement. However, we reverse because we fail to find that the Secretary fulfilled his duty under the labor certification provisions. The Secretary has the duty to determine whether there are sufficient American workers who are able, willing, qualified and available to perform the job that the alien has applied for. The Secretary relies heavily upon the fact that there is a surplusage of unemployed and underemployed American teachers in the United States, and the Department of Labor files showed 22 elementary school teachers "available" in the St. Paul area.

Although recognizing the need for a Montessori teacher to have some degree of training, there was no showing on the record that these "available" teachers had received any training at all. Absent such a showing, the Secretary could not conclude that there were "qualified" American workers available in the area. Digilab, Inc. v. Secretary of Labor, 495 F.2d 323, at 326 (CA1 1974), First Girl, Inc. v. Regional Manpower Administrator, 361 F.Supp. 1339, 1340 (N.D.Ill. 1973); Bitang v. Regional Manpower Administrator, 351 F.Supp. 1342, 1345 (N.D.Ill.1972).

■ Even assuming that a certain number of the "available" American teachers were "qualified," there is no basis in the record to conclude that any of them were "willing" to teach in either of the appellant school systems. Acupuncture Center of Washington v. Brennan, 364 F.Supp. 1038, 1041 (D.D.C.1973); Golabek v. Regional Manpower Administration, 329 F.Supp. 892, 895 (E.D.Pa.1971).

It is therefore our view that the Secretary abused his discretion in denying appellant teachers' requests for labor certification on the meager record then available. While a certain amount of deference should be given to the Secretary's determination, the basis for his decision cannot rest upon mere "conclusory" statements. Digilab, Inc. v. Secretary of Labor, 495 F.2d 323, at 327 (CA 1 filed March 22, 1974).

■ The Secretary also denied certification to appellant Jayasekera on the basis that her wage offer of $7,100 was below the prevailing wage of $7,800 for this occupation in the proposed area of employment. However, the $7,800 figure was derived from the starting salary of B.A. degreed public school teachers in Minneapolis. This was an inappropriate comparative standard. The Secretary must compare the proposed wage offer with the prevailing wage scale of other employees who perform the specific job applied for by the alien. Reddy, Inc. v. United States Department of Labor, 492 F.2d 538, at 545–546 (CA5 filed April 10, 1974); First Girl, Inc. v. Regional Manpower Administrator, 361 F.Supp. 1339, 1341 (N.D.Ill.1973). In Golabek v. Regional Manpower Administration, 329 F.Supp. 892, 895–96 (E.D.Pa.1971), it was held to be an abuse of discretion by the Secretary to compare the wage offer of an alien applicant to teach parochial school

---

10. While appellant schools preferred A.M.I. certified teachers, it does not appear that this was an absolute requirement. In oral argument before this court appellants' counsel stated:

> We stipulated below that although the schools have imposed an AMI certification requirement because we felt that was the best there is, if we couldn't get teachers meeting that standard we'd go down a

step at least to find teachers whether they might be AMS certified teachers who would carry comparable credentials. It is not a case of our holding fast that it has to be AMI or nothing. We have indicated that we are trying to apply some sort of reasonable management judgment in how teachers should be selected and we certainly have no purpose to exclude any great number of Americans.

with the prevailing wale scale of public school teachers. In the instant case, appellant Jayasekera's wage offer should have been compared with other Montessori teachers conducting classes for pre-school age children in the area of employment.

Based upon our holding that appellant schools may require adequate Montessori training as a prerequisite to employment, it is unnecessary for us to discuss the constitutional issues raised by appellants.

The trial court's granting of appellee's motion for summary judgment is reversed. The case is remanded to the district court with direction to remand to the Secretary of Labor for reconsideration of appellants' applications in light of this opinion.

Affirmed in part, reversed and remanded.