**SECRETARY OF LABOR OF the UNITED STATES et al., Defendants-Appellants,**

v.

**Phil FARINO and Hoe Kow Cantonese Restaurant, Plaintiffs-Appellees.**

**No. 73-1071.**

United States Court of Appeals, Seventh Circuit.

Heard Oct. 30, 1973.

Decided Dec. 19, 1973.

James R. Thompson, U. S. Atty., William T. Huyck and James K. Toohey, Asst. U. S. Attys., Chicago, Ill., for defendants-appellants.

Nathan T. Notkin, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT, Chief Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

In this action, plaintiff Phil Farino, the owner of an automobile service sta-

tion in Chicago, sought an Alien Employment Certification so that he could continue to employ an Israeli alien, Reuben Zippershtein, as a foreign auto mechanic. The other plaintiff, Hoe Kow Cantonese Restaurant, also located in Chicago, sought an Alien Employment Certification for Chinese alien Tin Sang Lo so that he could remain in its employ as a Cantonese cook.[1] Both Alien Employment Certifications had been denied by the Department of Labor's Manpower Administration.

Before aliens such as those plaintiffs seek to employ can qualify for sixth preference visas for permanent residence in the United States under 8 U.S.C. § 1153(a)(6),[2] the Secretary of Labor must certify that the aliens' entry into the domestic labor market will not adversely affect American labor. Thus 8 U.S.C. § 1182(a)(14) provides:

"(a) Except as otherwise provided in this chapter, the following classés of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \* \*

"(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a)(27)(A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title \* \* \*."

The Government argues that Congress has committed such labor certification determinations to the discretion of the Secretary of Labor so that judicial review is prohibited under Section 10 of the Administrative Procedure Act (5 U.S.C. § 701(a)). It argues further that if the determination is reviewable, plaintiffs lack standing to seek review.

In an unreported decision and order, the district court held that a refusal to certify is non-discretionary and thus subject to review under the Administrative Procedure Act.[3] It also held that plaintiffs were adversely affected or aggrieved by the defendants' decision and therefore had standing to sue. The court concluded that the denials of the certifications were unsupported by facts and therefore must be set aside as "arbitrary, capricious, an abuse of discre-

1. In a third Count, La Hacienda del Sol restaurant in Chicago sought such a certification for a Mexican alien but its complaint was dismissed as moot and no appeal was taken.

2. That Section provides:

"Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a)(ii) of this title, to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States."

3. Various other district judges have upheld their jurisdiction to review certification denials. Digilab, Inc. v. Secretary of Labor, 357 F.Supp. 941, 942 (D.Mass.1973); Wang v. Regional Manpower Administrator, 352 F.Supp. 260, 261 (N.D.Ill.1972); Bitang v. Regional Manpower Administrator, 351 F.Supp. 1342, 1344 (N.D.Ill.1972); Golabek v. Regional Manpower Administrator, 329 F.Supp. 892, 894 (E.D.Pa.1971); Ozbirman v. Regional Manpower Administrator, 335 F.Supp. 467, 470–471 (S.D.N.Y.1971).

tion, or otherwise not in accordance with law" under Section 10(e)(2)(A) of the Administrative Procedure Act (5 U.S.C. § 706(2)(A)). Pursuant to its authority to "compel agency action unlawfully withheld" (5 U.S.C. § 706(1)), the court ordered defendants to issue the requested alien certifications. We affirm in part and reverse in part.

### Reviewability and Standing

■ The Government's principal contention is that the Secretary of Labor's power under 8 U.S.C. § 1182(a)(14), *supra,* is discretionary and therefore not subject to judicial review under the Administrative Procedure Act. Section 10 of that Act provides in relevant part:

"This chapter applies, according to the provisions thereof, except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." (5 U.S.C. § 701(a)).

The applicable portion of the Immigration and Nationality Act, namely Section 1182(a)(14), does not mention the word "discretion" nor does it deal with reviewability of the Secretary's certification denials thereunder. The failure of the Immigration and Nationality Act to provide for judicial review of the Secretary's action does not bar review under the Administrative Procedure Act. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 157, 90 S.Ct. 827, 25 L.Ed.2d 184; Kingsbrook Jewish Center v. Richardson, 486 F.2d 663 (2d Cir. 1973). While the legislative history of Section 1182(a)(14) shows that Congress was interested in protecting American labor against an alien influx where the local economy could not absorb it, it does not show that Congress committed this agency action "to agency discretion" (5 U.S.C. § 701(a)), thereby cutting off judicial review.[4] A part of the House Report is entitled "Discretionary authority," but it deals with other Sections of the statute and does not discuss Section 1182(a)(14).[5]

Applying Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136, we hold that the Secretary's action is subject to judicial review. There a unanimous Court held that the Secretary of Transportation's approval of the bifurcation of a Memphis public park by a six-lane interstate highway was reviewable under the Administrative Procedure Act. Here, as in that case, "there is no indication that Congress sought to prohibit judicial review and there is most certainly no 'showing of "clear and convincing evidence" of a * * * legislative intent' to restrict access to judicial review." 401 U.S. at 410, 91 S.Ct. at 820 (ellipsis in original).

In the *Overton Park* case, the Court also held that the Secretary's decision did not fall within the exception for action "committed to agency discretion." Mr. Justice Marshall observed that it is "a very narrow exception" and applicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" 401 U.S. at 410, 91 S.Ct. at 821.[6] As in *Overton Park*, there is "law to apply," for aliens seeking to enter the United States to perform skilled or unskilled labor are not be be excluded

---

4. See House Report No. 1365, 82d Cong., 2d Sess., 1952 U.S.Code Cong. and Adm.News, pp. 1653, 1705; Conf.Report, *Id.* at 1753; Senate Report No. 748, 89th Cong., 1st Sess., 1965 U.S.Code Cong. and Adm.News, pp. 3328, 3342; Conf.Report, *Id.* at 3353. The 1952 Reports deal with the original Act, and the 1965 Reports deal with amendments thereto.

5. 1952 U.S.Code Cong. and Adm.News at p. 1705.

6. See also Abbott Laboratories v. Gardner, 387 U.S. 136, 140–141, 87 S.Ct. 1507, 18 L. Ed.2d 681; Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150, 156–157, 90 S.Ct. 827, 25 L.Ed.2d 184; Barlow v. Collins, 397 U.S. 159, 165–167, 90 S.Ct. 832, 25 L.Ed.2d 192; Berger, "Administrative Arbitrariness and Judicial Review," 65 Col.L.Rev. 55 (1965).

where the Secretary has determined that there are not sufficient able, willing, qualified and available workers in the United States where the alien is destined to perform his labor and at the time he seeks admission, and that the employment of such aliens will not adversely affect the wages and working conditions of similarly employed workers in the United States. Proper application of this standard undoubtedly depends on the expertise of the Secretary of Labor. But that does not insulate his decision from judicial review. Certainly the subject matter is no more specialized than the engineering problems under review in *Overton Park*. Thus the exemption for action "committed to agency discretion" is inapplicable.

Applying Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184, and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192, the district court concluded that the aliens' employers had standing under Section 10(a) of the Administrative Procedure Act (5 U.S.C. § 702).[7] We agree. Those cases accord standing under that Act where "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute * * * in question." 397 U.S. at 153, 90 S.Ct. at 830. It is clear that these plaintiffs have adequately alleged that they will be economically injured if not permitted to employ these aliens. Further, the legislative history makes clear that Section 1182(a)(14) was substituted for, and intended to fulfill the purpose of, the preexisting "contract labor clauses." House Report No. 1365, 82d Cong., 2d Sess., 1952 U.S.Code Cong. and Adm.News, pp. 1653, 1661–1662, 1705. Thus potential employers of aliens are within the zone of interests to be regulated. As *Data Processing* shows, where, as here, a statute is concerned, "the trend is toward enlargement of the class of people who

may protest administrative action." 397 U.S. at 154, 90 S.Ct. at 830. Under this pair of Supreme Court cases, we conclude that the district court correctly upheld the standing of the plaintiffs.

On both the reviewability and standing issues, the Government relies on Braude v. Wirtz, 350 F.2d 702 (9th Cir. 1965), and Cobb v. Murrell, 386 F.2d 947 (5th Cir. 1967). Both cases were decided before *Overton Park, Data Processing*, and *Barlow*. We consider that their holdings are no longer tenable and will not be followed in the 5th and 9th Circuits in the future.

### Standard and Procedures for Review

We believe that the standard of review set forth in *Overton Park* should also be applied to this case. The Secretary's determination does not have to meet the substantial evidence test. On the other hand, the Administrative Procedure Act requires the district court to engage in a substantial inquiry. Even though the Secretary's decision is entitled to a presumption of regularity, his action is not to be shielded "from a thorough, probing, in-depth review." 401 U.S. at 415, 91 S.Ct. at 823.

As decided in *Overton Park*, the district court is first required to find whether the Secretary acted within the scope of his authority. As mandated by Section 10(e)(2)(A) of the Administrative Procedure Act, *supra*, his determination must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make such a finding the district court must consider whether the Secretary's decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Nevertheless, "the ultimate standard of review is a narrow one," and the district court may not "substitute its judgment for that of the agency." 401 U.S. at 415–416, 91 S.Ct. at 823.

7. Section 10(a) provides:
"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

"The final inquiry is whether the Secretary's action followed the necessary procedural requirements." In discussing the only procedural issue presented in *Overton Park*, the Court concluded that formal findings by the Secretary facilitate review, but the absence of such findings does not necessarily require a remand. 401 U.S. at 417, 91 S.Ct. 814.

This case presents a different procedural issue, *viz.*, whether plaintiffs were afforded an adequate opportunity to be heard before the agency. Pursuant to 29 C.F.R. § 60.3(c), plaintiffs filed forms titled "Statement of Qualifications of Alien," and "Job Offer for Alien Employment" with the Illinois State Employment Service. The State Employment Service sent these forms, along with a third form containing information about the number of available workers, to the Regional Manpower Administration. On the basis of the information on these forms, that agency decided to reject plaintiffs' respective applications for alien employment certifications. The denials were communicated to plaintiffs on a fourth form, which listed five possible reasons for denial. The applicable reasons in each case were indicated by checkmarks. In Farino's case, the only reason checked was:

"Available job market information will not warrant a certification of unavailability of workers in the United States. Consequently, no certifications may be issued for the requested occupation in the proposed labor area, regardless of corrections of other items listed below."

The same form was sent to the Hoe Kow Cantonese Restaurant, and the same reason was checked. Another reason was also checked, and with two blanks filled in, read as follows:

"The wage offer of $510/mo. is below the prevailing rate of $865–80/mo. for this occupation in the proposed area of employment."

It was represented at oral argument, and the record does not indicate otherwise, that plaintiffs were not given the information supplied by the State Employment Service which supported the refusal to certify that workers were not available in the United States.

Based on the conclusory notice just quoted, plaintiffs took an administrative appeal. Hoe Kow Cantonese Restaurant indicated in its letter of appeal that the $865 per month prevailing wage was the rate for chefs, whereas the application was for certification for an assistant chef, and that plaintiff would increase its wage offer to $620 per month. Apparently on the basis of this letter, the Reviewing Officer found that the wage offer was not less. than the prevailing rate. Both appeal letters attacked as best they could the findings that "Available job market information will not warrant a certification of unavailability of workers," indicating that plaintiffs had been unable to find available workers and that the State Employment Service had been of no assistance. Each finding that workers were available was affirmed. The Reviewing Officer also found that Farino's wage offer was below the prevailing rate, though the initial decision had not checked this ground.

Plaintiffs then brought this action for review of the administrative orders. During the proceedings in the district court, part of the information furnished the Regional Manpower Administrator by the State Employment Service was revealed. The state agency had advised defendants that there were 62 automobile mechanics available, four of whom had foreign car experience, and that the average wage was $4.29 per hour. Plaintiff Farino had offered $3.50 per hour. The state agency further advised defendants that it had no current information as to the availability of Chinese cooks, that the state agency was advised by an official of Cooks & Bakers Union Local 88 that 25 chefs were available but that none of them was a Chinese chef, and that it was advised by a different representative of the same local union that "Chinese Chef are available (sic)." Plaintiffs filed affidavits indicating

that each person referred to them by the State Employment Service was unqualified, unavailable, or both, and that the union official who represented that a Chinese chef was available had been unable to provide one. They also filed unsworn representations of counsel that the State Employment Service's statement that 62 auto mechanics were available meant only that 62 persons claiming to be auto mechanics had at some time registered with the Service, that the Service did not verify their qualifications or have any system for removing them from the list when they obtained a job, retired, or left the area, and that the Service had refused to provide names and addresses of any auto mechanics.

If the report of the State Employment Service stood unimpeached, we could not conclude that the Secretary's refusal to certify the alien workers was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act, § 10(e)(2)(A). However, after considering plaintiffs' affidavits, the district judge did reach that conclusion and ordered the requested alien certifications issued. The question before us is whether it was proper to consider these affidavits, and in effect, try the issue *de novo* in the district court, or whether the matter should have been remanded to the agency for further proceedings. We note that the district judges who have considered this question have split very nearly evenly. Of the cases cited in footnote 3, *supra*, *Wang*, *Bitang*, and *Ozbirman* were remanded to the agency. In *Digilab*, defendants were ordered to issue the certificate, and it appears that that was the result of *Golabek*, though the opinion is unclear.

■ There is judicial power to use either procedure. The district court in this case relied on Sections 10(e)(1) and 10(e)(2)(F) of the Administrative Procedure Act. Section 10(e)(1) authorizes the reviewing court to "compel agency action unlawfully withheld." Consideration of affidavits was held to be justi-

fied by Section 10(e)(2)(F), which authorizes the reviewing court to set aside agency actions "found to be . . . unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court." The Supreme Court has indicated that one of the two circumstances for invoking Section 10(e)(2)(F) is "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate." *Overton Park*, *supra*, 401 U.S. at 415, 91 S.Ct. at 823. If plaintiffs had no opportunity before the agency to respond to the information provided by the State Employment Service, this would be such a case, and trial *de novo* in the district court would be a possible procedure. See First National Bank of Smithfield v. Saxon, 352 F.2d 267 (4th Cir. 1965).

However, it is clear that the district court also has power to remand to the agency for further proceedings. We think such power is implicit in Section 10(e)(2)'s authorization to "set aside agency action, findings, and conclusions," particularly in light of Section 10(b) which provides that "The form of proceeding for judicial review is * * * any applicable form of legal action." The Supreme Court has indicated that the district courts have inherent power to remand administrative matters to agencies.

"[R]eview under the equity or declaratory jurisdiction of [the district] courts would seem to afford a remedy consonant with § 10 of the Administrative Procedure Act * * *. The relief afforded * * * could thus be limited to setting aside or enjoining the Commission's order and remanding the cause to it for further consideration * * *. Consistently with that jurisdiction also the review could be confined to the record made before the Commission rather than one compiled by independent evidence not presented to the Commission or considered by it." United States v. Jones, 336 U.S. 641, 69 S.Ct. 787, 803, 93 L.Ed. 938.

*Overton Park, supra,* clearly contemplated the possibility of a remand to the Secretary of Transportation, for it holds that "the absence of formal findings does not necessarily require" such a remand. The case was remanded to the district court because the record appeared to be sufficient to allow full review without the delay that a remand to the Secretary would cause; if it were not, the district court was left free to choose the fastest method of securing additional information. 401 U.S. at 419–421, 91 S.Ct. 814. Accord, United Gas Improvement Co. v. Continental Oil Co., 381 U.S. 392, 406, 85 S.Ct. 1517, 14 L.Ed.2d 466; United States v. Bianchi, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652.

 Where the district court has power either to conduct a trial *de novo* or remand for further agency proceedings, it is a question of judicial policy which course to follow. We conclude that in alien employment certification proceedings, remand to the agency is the better practice. The Court of Claims has faced an analogous problem, and Judge Davis has listed factors which we find equally relevant here:

"Congress actually wanted and expected the agency to make the determination, with some judicial oversight but not until after the administrative findings. There is no reason to believe that, under proper procedures, the Board cannot or will not achieve a fair result, taking account of all presentations to it. * * * Moreover, the intricate, specialized, and indeterminate nature of the determination * * * makes it particularly appropriate for an expert administrative body with continuing experience in the field to make the first full canvass of the problem. * * * This is an instance, we believe, in which the need, at the administrative level, is not for a formal trial but for better 'opportunity for party participation.'" Moore-McCormack Lines, Inc. v. United States, 413 F.2d 568, 588–590, 188 Ct.Cl. 644 (1969).

An acceptable procedure on remand to the agency need not include a trial type hearing. In general, it should be sufficient if the Regional Manpower Administrator makes available to plaintiffs all the information before him, and gives plaintiffs a reasonable opportunity to respond with affidavits and written argument. However, it appears that an important issue in this case is the reliability of the information-gathering procedures used by the Illinois State Employment Service. Any procedure on remand must include an opportunity to litigate this issue. One possibility is for the Manpower Administrator to ask the state agency to give plaintiffs a full explanation of its procedures, so that plaintiffs may respond in writing. Alternatively, plaintiffs might be given an opportunity to cross-examine the state officials about the information furnished the defendants. The defendants themselves should be given the first opportunity to work out an acceptable procedure. After the limited hearing we have described, the defendants should enter a new decision certifying or refusing to certify the employment. A final agency decision denying the certificate, after any administrative appeals, would be subject to judicial review on the record in the district court. If at that time the decision is found to be "arbitrary, capricious, [or] an abuse of discretion," then the district court should "compel agency action unlawfully withheld" by ordering the issuance of the certificate. Administrative Procedure Act, § 10(e).

Our discussion of plaintiffs' right to a remand has been based on the assumption that no opportunity for a hearing such as we have described was afforded by defendants. The record appears to support this assumption but it is far from clear. Accordingly, we remand to the district court for a determination whether plaintiffs were given a sufficient opportunity to be heard after the information before the defendants was revealed to them. If not, the case should be remanded to the Regional

Manpower Administrator. If plaintiffs were given such an opportunity and failed to take advantage of it, judgment should be entered for the defendants because in that event plaintiffs' affidavits should not have been considered in the district court.

*Discovery Petition*

In the court below, plaintiffs filed a petition for discovery of a list of available unemployed persons with the qualifications demanded by the job offers made by the plaintiffs. Such information had reportedly been given to the defendants by the Illinois State Employment Service and was sought by plaintiffs under the Freedom of Information Act (5 U. S.C. § 552). The discovery petition was denied in an order holding that the names of available unemployed persons on December 9, 1971, the date of the request by plaintiffs' attorney to defendant Administrator, were irrelevant since the certification denials allegedly became final in September and October 1971. The court also held that the refusal to disclose the information was proper under 29 C.F.R. § 70.22(b).[8] The Government's brief does not discuss this discovery problem.

■■■■ The Freedom of Information Act was designed to curb official secrecy. None of the exceptions provided in Section 552(b) appears to be appli-

cable. The regulation relied on cannot expand those exceptions, and instead expressly attempts to reduce their scope. Therefore, the plaintiffs should be furnished with whatever relevant information the defendants procured from the Illinois State Employment Service that is not already in plaintiffs' possession. Information beyond the scope of the issues as framed on remand, and therefore not discoverable under Rule 26 or required by this opinion to be given to plaintiffs in the agency proceedings may be available to plaintiffs in a separate action under 5 U.S.C. § 552(a)(3). In so holding, we do not accept plaintiffs' argument that the Illinois State Employment Service is an agent of the federal government with respect to 8 U.S.C. § 1182(a)(14).

■■■ We also reverse the district court's holding that the names of unemployed persons available on dates after October 1971 are irrelevant. On remand to the agency, plaintiffs should be permitted to show that whatever the situation was two years ago, no workers are available now. The district court correctly perceived its task as reviewing the agency's finding with respect to availability of workers on a certain date. But there was no reason to believe that the number of available workers changed so much between October 1971 and December 9, 1971, that information

8. 29 C.F.R. § 70.22(b) provides:

"*Disclosure of protected records; conditions precedent.* Although the Department of Labor is not required by the Freedom of Information Act to make available for inspection or copying any materials or documents included in its records which are within the categories described in 5 U.S.C. 552(b)(2), (4), (5), (6), (7), (8), or (9) (see §§ 70.23–70.28), under the Department's disclosure policy set forth in § 70.11 particular records requested which come within these categories, or portions thereof, shall nevertheless be made available to the extent, but only to the extent, that the appropriate officer authorized to disclose information from Department records determines that the disclosure will further the public interest and will not impede the discharge of any of the functions of the Department

of Labor. Such a determination shall be made with due regard not only to the public interest in accessibility to the people of information regarding operations of their Government but also to the public interest in protecting citizens from impairment of their rights to privacy or from harassment, injury, or the dissemination of information concerning them which is privileged or has been submitted by them to the Government on a confidential basis. In determining whether access to such records will be permitted, due consideration shall be given to the public interest in preventing disclosure of information which would handicap, obstruct, or jeopardize effective performance of the Department's functions under statutes or Executive orders, including its duties with respect to law enforcement."

about the latter date became irrelevant for discovery purposes. Of course, the district court's review of future alien employment certification proceedings will be on the agency record, and unless the record is inadequate, it seems extremely unlikely that discovery in the district court will be necessary or appropriate for such a review.

Although we are affirming as to reviewability and standing, the case must be reversed and remanded for further proceedings consistent with this opinion, with each party to bear its own costs.