**DIGILAB, INC. and Guillermo Ferla, Appellees,**

v.

**The SECRETARY OF LABOR and Lawrence W. Rogers, Appellants.**

No. 73–1244.

United States Court of Appeals, First Circuit.

Argued Oct. 2, 1973.

Decided March 22, 1974.

William A. Brown, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellants.

Joseph F. O'Neil, Boston, Mass., with whom Peter L. Zimmerman, Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, MOORE[*] and McENTEE, Circuit Judges.

MOORE, Circuit Judge.

The Secretary of Labor and Lawrence W. Rogers, Regional Manpower Administrator [Boston area], defendants-appellants, appeal from an order of the United States District Court ordering them to issue an alien certification pursuant to 8 U.S.C. § 1182(a)(14).[1]

Plaintiff Guillermo Ferla (Ferla) is a native of Uruguay who entered this country on August 14, 1970, to pursue his studies in the field of electrical engineering at Massachusetts Institute of Technology.

Plaintiff, Digilab, Inc. (Digilab), is a corporation doing business in Cambridge, Massachusetts, and engaged in the design, production and sale of analytical and biomedical instrumentation. Digilab had hired Ferla as a summer employee in 1971. Desirous of retaining Ferla's services thereafter, under date of October 26, 1971, Digilab filed an application for alien employment certification on behalf of Ferla (Form MA7–50B) for admission pursuant to 8 U.S.C. § 1182(a)(14) together with a statement of Ferla's qualifications.

On November 15, 1971, the application was denied, notice thereof being given on a printed form with a check placed in paragraph 3 which stated: "Reasons: Available job market information will not warrant a certification of unavailability of workers in the U.S."

On January 13, 1972, Digilab resubmitted its application for Review to the Regional Manpower Administration (Boston) and presented detailed facts

[*] Of the Second Circuit sitting by designation.

1. 8 U.S.C. § 1182(a)(14) provides:

Aliens seeking to enter the United States for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. . . .

and *documentation in support thereof.*[2] This application was submitted to the Reviewing Officer of the Manpower Administration and on January 31, 1972, *Digilab was informed by the Reviewing Officer that the facts presented failed to produce sufficient grounds for reversing the November 15, 1971, decision.* The Reviewing Officer offered the suggestion that Digilab "again contact the Massachusetts Division of Employment Security" in Waltham which could put it in contact with the National Registry for Engineers in Sacramento, California, which "reports an excess of over 200 Electrical Engineers ranging from B.A. up to and including Ph.D.'s."

On April 7, 1972, plaintiffs filed their complaint (with supporting documents) for a declaratory judgment that Ferla be granted the requested certification, alleging that the denial did not set forth findings of facts in conformity with the Administrative Procedure Act and was "arbitrary, an abuse of discretion and contrary to law."

On January 3, 1973, defendants moved to dismiss the complaint on the merits or in the alternative for summary judgment. This motion was denied. Thereafter plaintiffs filed their motion for summary judgment which was granted. From this order, defendants appeal.

The District Court filed two opinions. The first (February 1, 1973) was addressed to the denial of defendants' motion for judgment on the pleadings. The Court found that the listing of 200 electrical engineers did not "establish a necessary record of sufficient workers in the United States who are 'qualified', 'available', 'able' and 'willing'." Some six weeks after this decision, plaintiffs moved for summary judgment. In opposing this motion, in their memorandum of law defendants asked leave to file any necessary affidavits within three weeks. The record does not disclose any such filing.

In its second opinion (May 4, 1973), 357 F.Supp. 941, the Court held that there must be a determination by the Administrator that there are sufficient workers able, willing, qualified and available to Digilab; that there was no such finding; and that, therefore, there was no compliance with the express requirements of the statute. For these reasons, the Court granted plaintiffs' motion. For authorities the Court relied upon Golabek v. Regional Manpower Administration, 329 F.Supp. 892, 895 (E.D.Pa.1971), and two unreported cases, Farino, et al. v. Secretary of Labor, et al., and Bitang, et al. v. Regional Manpower Administration, both from the Northern District of Illinois, Eastern

2. 1. Our needs are highly specific and there are very few engineers who have the *necessary training and experience.*

As we have indicated in our applications, the job includes both design and test work on scientific equipment. The signals used cover the entire EM spectrum from audio to radio to optical frequencies. The applications of the equipment to be designed include IR spectroscopy, NMR and NQR spectroscopy, biomedical glaucoma detection, etc. The signal analysis is both analog and digital and requires both analog and digital experience.

The engineer we are looking for should know Fourier analysis, Laplace transform, RF signal detection, Bolean algebra and digital design, computer programs, digital systems, filtering, Z-transforms and circuit design.

His work will include the design and test of nuclear magnetic resonance and nuclear quadrupole resonance equipment, RF detection systems, digital systems, optical *instrumentation. In addition to design and test, analysis of biomedical equipment is required, as is field service when necessary on the above equipment.*

Paragraphs 2 through 7 of the resubmitted *application for review are summarized as follows:*

The application also included data concerning the academic background of Mr. Ferla; titles of academic articles; *unsuccessful efforts to advertise the position and evaluation of some 75 responses from seven states; the difficulty of at least one other company in filling a specific engineering slot; and the key relationship of Ferla to governmentally sensitive work of Digilab's parent corporation.*

Division, Doc.Nos.71–C–2495 and 72–C–1099, respectively.[3]

This court is now called upon to reconcile two praiseworthy Congressional legislative objectives: (1) to admit and absorb into our citizenry skilled workers from other lands who would make a contribution to our society, and (2) to protect our own workers by excluding aliens whose entry might deprive our citizens of comparable jobs. The requirements for admission have been clearly stated in 8 U.S.C. § 1182(a)(14). The alien shall be *ineligible* to receive a visa and shall be *excluded unless* the Secretary certifies that there are not sufficient workers in this country who are "able, willing, qualified, and available" at the place where the alien is destined to perform his labor.

The problem is easily stated; not so easily resolved. The Secretary argues in effect: How can I issue a certificate when the statistics show that there are hundreds of electrical engineers available with degrees ranging from B.S. to Ph.D.? Digilab answers that Ferla's position is unique; that it has examined resumes of many applicants and found them not qualified and as lacking the background required by Digilab.

Quite apart from labor statistics, the Secretary claims that he has the right to judge the good faith of the employer, the necessary qualifications for the job, and the mobility of engineers as a class. But just as the Secretary quite correctly argues that he should not be put in the position of running an employment office and have to recruit workers for various industries, so also, he should not have the privilege of determining the qualifications of any particular applicant for the job to be filled. Nor without proof, should he have the right to attack the good faith of an employer's personnel procedures.

In *Bitang, et al., supra,* the district judge found that the Secretary of Labor had "merely adopted the conclusory statement of the ISES that these plaintiffs' professions were listed as "surplus," and that his duty had not been fulfilled "through unexamined acquiescence in a state agency's ultimate conclusions." The judge remanded the action to the defendant [Regional Manpower Administrator of the United States Department of Labor] "for the making of further determinations" with respect to 8 U.S.C. § 1182(a)(14).

■■ Similar relief would seem appropriate here. The detailed enumeration of their job requirements and Ferla's qualifications to meet them (letter of January 13, 1972) are not adequately answered by the conclusory statement that some 200 electrical engineers are listed in a Registry maintained in Sacramento, California. "Electrical engineers" in this age of intense specialization is far too generic a term in determining whether any of them are qualified in the particular field required by Digilab. This was the conclusion of the district judge in his first opinion, namely, that this fact "does not in this court's eyes establish a necessary record

3. Subsequent to the decision by the District Court in this case and the argument of this appeal, the Court of Appeals for the Seventh Circuit decided (December 19, 1973) the appeal in the *Farino, et al.* case (No. 71–C–2495). After holding that the case was reviewable by the Court of Appeals and that plaintiffs therein had standing to sue, the Court turned to the procedural aspects created by the somewhat conflicting facts and asked itself whether the issue should be tried "*de novo* in the district court, or whether the matter should have been remanded to the agency for further proceedings." Secretary of Labor of the United States et al. v. Farino and Hoe Kow Cantonese Restaurant, Seventh Circuit, 490 F.2d 885. In deciding which judicial policy to follow, the Court concluded "that in alien employment certification proceedings, remand to the agency is the better practice." In the event that defendants-appellants are unable to produce proof sufficient to satisfy the requirements of 8 U.S.C. § 1182(a)(14), the District Court may issue such judgment as may be warranted under the circumstances. Bitang, et al. v. Regional Manpower Administration, is now reported in 351 F.Supp. 1342.

of sufficient workers in the United States who are 'qualified,' 'available,' 'able' and 'willing.' " Significance may also be attributed to the failure of the defendants, after learning of Digilab's specific requirements and Ferla's qualifications to meet them, to submit further proof of the availability of engineers in such a restricted category.

However, the Secretary's discretion in this field entrusted to him by Congress is not lightly to be disregarded. On the other hand, this discretion should not be exercised on the mere conclusory (possibly irrelevant) statements given here.

Therefore, this action is remanded to the district court for a direction to defendants for a more specific factual basis for their decision.