Muhammed Sajjad YUSUF,
Plaintiff,

v.

REGIONAL MANPOWER ADMINIS-
TRATION OF the UNITED STATES
DEPARTMENT OF LABOR et al., De-
fendants.

Civ. A. No. 74–38.

United States District Court,
W. D. Virginia.

Feb. 19, 1975.

Ronald R. Tweel, Charlottesville-Albemarle, Legal Aid Society, Charlottesville, Va., for plaintiff.

Carr L. Kinder, Jr., Asst. U. S. Atty., Roanoke, Va., for defendants.

## OPINION and ORDER

TURK, Chief Judge.

Plaintiff, Muhammad Sajjad Yusuf, has filed this suit challenging the decision of the Assistant Regional Director for Manpower of the Department of Labor which affirmed the denial of his application for alien certification. Plaintiff seeks review of this administrative decision pursuant to 28 U.S.C. §§ 2201, 2202 (Declaratory Judgments) and the Administrative Procedure Act, 5 U.S.C. § 701 et seq. He asks this court to declare the denial of his application to be void as arbitrary, and an abuse of discretion and a denial of due process of law; to declare that he is entitled to third preference status under the Immigration and Naturalization Act, 8 U.S.C. § 1153(a)(3); or alternatively, to remand his case to the Assistant Regional Director for Manpower for a *de novo* hearing on the issue of whether he is entitled to a third preference and direct that at such hearing defendants identify for each region in which plaintiff is willing to relocate (1) the number of positions for which he qualifies and (2) the number of applicants who are in fact able, qualified, available and willing with plaintiff being given an opportunity to present oral evidence and cross-examine adverse witnesses. The case is presently before the court pursuant to defendants' motion to dismiss or alternatively, for summary judgment.

Plaintiff is a non-immigrant alien and a citizen of Bangladesh who has been in this country since September, 1968 pursuant to a student visa. Plaintiff resides in Charlottesville, Virginia where he has been enrolled in a doctoral program in Foreign Affairs at the University of Virginia. He stated in his complaint that he expected to complete his degree requirements in January, 1975.

On April 30, 1973, plaintiff applied to the Region III Manpower Administration for alien employment certification. He received a notice dated March 13, 1974, informing him that his application had not been certified because "available job market information will not warrant a certification of unavailability of workers in the U.S. who are able, willing and qualified." Plaintiff sought review of this decision specifying in detail his particular skills, questioning the reliability of the data used in denying his application and indicating that he would seek employment anywhere in the United States. By letter dated June 27, 1974, he was informed by the Assistant Regional Director for Manpower that the previous denial had been affirmed.

■ Defendants raise several grounds for dismissal of plaintiff's suit which require no extended discussion. Defendants first contend that the suit is barred by the doctrine of sovereign immunity. The discussion and rejection of such a claim in an analogous situation is found in Littell v. Morton, 445 F.2d 1207 (4th Cir. 1971) which is ample authority for rejecting such a claim in this case.

■ Defendants further contend that judicial review of the administrative decision in this case is precluded because the APA does not apply "agency action . . . committed to agency discretion by law", 5 U.S.C. § 701(a)(2), and that plaintiff lacks "standing" under the APA to bring this suit. Again, on the basis of *Littell, supra* at 1211, it is clear that judicial review is available, at least to the extent of determining whether there has been an abuse of discretion. And it is also clear that "standing" exists for an alien in cases challenging administrative action taken pursuant to § 212(a)(14) of the Immigration and Naturalization Act. E. g., Reddy, Inc. v. United States Department of Labor, 492 F.2d 538 (5th Cir. 1974); *see* Pesikoff v. Secretary of Labor, 501 F.2d 757 (D.C.Cir. 1974); Secretary of Labor v. Farino, 490 F.2d 885 (7th Cir.

1973). The court accordingly will consider the merits of plaintiff's challenge under the APA to wit: that the denial of his application for alien certification should be set aside as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 5 U.S.C. § 706(2)(A).

In his application, plaintiff indicated that the occupation he would seek in this country would be that of "teaching (political science)" and for his intended place of residence he listed his address in Charlottesville, Virginia. He listed as his qualifications that he had B.A. and M.A. degrees in Islamic Studies, an M.A. degree in Foreign Affairs and an expected Ph.D degree in Foreign Affairs. He also indicated that he had taught courses in the Department of Government and Foreign Affairs at the University of Virginia from September, 1969 until June, 1972 in the areas of international politics and listed as additional qualifications his ability to speak, read and write Urdu and English, his ability to speak Hindi and his ability to read and write Arabic. On the basis of this information, the Certifying Officer of the Regional Manpower Administration tested plaintiff against the occupational category of "Faculty Member" from the Dictionary of Occupational Titles, and by utilizing the Employment Service Automated Reporting System obtained the following data as to the availability of "Faculty Member" positions in the various states in Region III:

| | | Applications | Openings |
|---|---|---|---|
| Pennsylvania | 12/31/73 | 166 | 0 |
| Virginia | 12/31/73 | 82 | 3 |
| Delaware | 1/31/74 | 8 | 2 |
| Maryland | 12/31/73 | 45 | 2 |
| West Virginia | 12/31/73 | 11 | 1 |
| | Totals | 312 | 8 |

The Certifying Officer also made reference to "The Chronicle of Higher Education," dated January 28, 1974, Vol. VIII, p. 17 and an article therein with the headline "Faculty Firings Soar as Slump Hits Enrollment" in denying certification to plaintiff.

Plaintiff contends that data used by the Certifying Officer in determining that there was a shortage of "Faculty Member" positions available did not accurately reflect the availability of jobs for which he qualifies. In challenging the reliability of the information used by defendants in denying his application, plaintiff points out that in addition to being a political scientist, he is a specialist in the politics of South Asia and speaks several languages from that region and thus his skills are particularly marketable. He further contends that personal contacts, newsletters within the field of political science and university placement offices are used to publicize faculty positions that would not necessarily appear in the State Employment Service figures used by the Certifying Officer. He also contends that since he expressed his willingness to relocate anywhere in the United States, the Manpower Administration should not have limited its determination as to the availability of jobs to the states in Region III. Finally, he argues that the defendants should be required to show that the 312 applicants for faculty member positions are actually able, willing, qualified and available to take the 8 jobs in question.

Section 212(a)(14) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(a)(14), the application of which plaintiff here challenges as arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law provides:

Excludable Aliens—General Classes
(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

.    .    .    .    .    .

(14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient

workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to special immigrants defined in section 1101(a)(27)(A) of this title (other than the parents, spouses, or children of United States citizens or of aliens lawfully admitted to the United States for permanent residence), to preference immigrant aliens described in sections 1153(a)(3) and 1153(a)(6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title.[1]

Plaintiff argues that the proper application of section 212(a)(14) places upon defendants the burden of proving that there are sufficient domestic workers who are able, willing, qualified and available for employment commensurate with his skills and that his employment will not have an adverse effect on the wages and working conditions of domestic employees. Defendants, on the other hand, argue that the statute intended that plaintiff carry these burdens. In Pesikoff v. Secretary of Labor, 501 F.2d 757 (D.C.Cir. 1974) the court determined from a consideration of section 212(a)(14) and its legislative history, that the statute established a presumption that aliens should not be allowed entry into the United States for the purpose of performing labor because of their impact on domestic workers; and that once the Secretary of Labor concludes from the available market data that domestic workers are available to perform the work sought by the alien, then the alien has the burden of overcoming the presumption by establishing the existence of the two requisites of section 212(a)(14), i. e., (1) the lack of domestic workers who are able, willing, qualified and available at the time of his application to perform the work he seeks and (2) that his employment will not adversely affect the wages and working conditions of similarly employed workers.

Several other courts have interpreted the statute as placing the burden of establishing the requisites of section 214(a)(14) on the Secretary of Labor, e. g., Digilab, Inc. v. Secretary of Labor, 495 F.2d 323 (1st Cir. 1974); Secretary of Labor v. Farino, 490 F.2d 885 (7th Cir. 1973); First Girl, Inc. v. Regional Manpower Administrator, 361 F. Supp. 1339 (N.D.Ill.1973), aff'd 499 F.2d 122 (7th Cir. 1974); Acupuncture Center of Washington v. Brennan, 364 F. Supp. 1038 (D.D.C.1973); Bitang v, Regional Manpower Administration, 351 F.Supp. 1342 (N.D.Ill.1972); Golabek v. Regional Manpower Administration, 329 F.Supp. 892 (E.D.Pa.1971); however, only in *Pesikoff* was section 212(a)(14) analysed in terms of its legislative history. Judge Wright's conclusions in *Pesikoff* with regard to the shifting of the burden of proof to the alien is persuasive, and this court has accordingly considered plaintiff's challenge

---

1. Section 1153(a)(3) referred to in the above provision is the "third preference" category which plaintiff seeks to utilize for the purpose of his certification. This section provides:

§ 1153. Allocation of immigrant visas— Categories of preference priorities; per centum limitations; conditional entries; waiting lists

(a) Aliens who are subject to the numerical limitations specified in section 1151(a) of this title shall be allotted visas or their conditional entry authorized, as the case may be, as follows:

.    .    .    .

(3) Visas shall next be made available, in a number not to exceed 10 per centum of the number specified in section 1151(a)(ii) of this title, to qualified immigrants who are members of the professions, or who because of their exceptional ability in the sciences or the arts will substantially benefit prospectively the national economy, cultural interests, or welfare of the United States.

to the denial of his application in a like manner. *Accord,* Tang v. District Director of U.S. Immigration and Naturalization Service, 298 F.Supp. 413 (C. D.Cal.1969), aff'd 433 F.2d 1311 (9th Cir. 1970).

■ Thus, the court rejects plaintiff's argument that pursuant to the statute the Secretary must identify for each region in which plaintiff is willing to relocate (1) the number of positions for which he qualifies and (2) the number of applicants for such positions who are in fact qualified, willing and available to take these jobs. To so require would in effect put the Secretary in the position of operating a nationwide employment office, which, as *Pesikoff* amply demonstrates, is a burden not contemplated by the statutory scheme. Rather, the court is of the opinion that the Secretary's burden under section 212(a)(14) is borne if a generalized survey of the labor market in an applicant's area of expertise demonstrates the availability of domestic workers who are apparently qualified to perform the available jobs. Upon such a showing by the Secretary, the burden then shifts to the alien applicant to demonstrate in fact that there are not sufficient domestic workers who are able, willing, qualified and available to perform the work he seeks and that his employment will not adversely affect the wages and working conditions of domestic workers.

■ However, even in light of the above interpretation of section 212(a) (14), the court is of the opinion that the present administrative record is inadequate to justify granting the defendant's motion for summary judgment and that the case should be remanded for further administrative development. *See* Digilab, Inc. v. Secretary of Labor, 495 F.2d 323 (1st Cir. 1974); Secretary of Labor v. Farino, 490 F.2d 885 (7th Cir. 1973). The reason for this conclusion is that the data relied upon by the Certifying Officer in denying plaintiff's application has virtually no probative value in determining the availability of domestic workers with whom plaintiff would compete for work. Such a lack of evidentiary basis for the administrative decision is an abuse of discretion justifying judicial relief. *See* Citizens to Preserve Overton Park v. Volpe, 401 U. S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The generalized survey of the labor market in Region III undertaken by the Certifying Officer in response to plaintiff's application demonstrated that there was an oversupply of applicants for the occupation of "Faculty Member." This category would seemingly include all of the numerous and diverse teaching positions in higher education. Whether there was an oversupply of applicants in the field of political science/foreign affairs is not demonstrated by such data.

The decision in *Pesikoff, supra* upon which defendants rely, is worthy of comparison in this respect. There, the intending immigrant was denied a sixth preference certification as a live-in maid in Houston, Texas on the basis of statistics from the Texas Employment Commission which indicated that there were 180 maids registered with the Commission's Houston office. The court agreed with the Secretary that such evidence was sufficient to demonstrate the availability of domestic workers to perform the employer's job even though his personal preference for a live-in maid might go unsatisfied. The instant case, however, presents a different situation since the data relied upon by the Certifying Officer did not necessarily reflect the availability of domestic workers to perform jobs in plaintiff's area of expertise. It is worth noting that although section 212(a)(14) is designed to protect our domestic work force, it also recognizes the Congressional objective of absorbing skilled workers into our society. Digilab, Inc. v. Secretary of Labor, 495 F.2d 323 (1st Cir. 1974). By relying on data reflecting an oversupply of applicants for all faculty positions and ignoring plaintiff's particular expertise in foreign affairs, the Certifying Offi-

cer may well have defeated the latter objective.

Defendants do not contend that an accurate, yet general survey of the labor market relevant to plaintiff's skills would be unduly burdensome, and it would seem reasonable to assume that the resources of the Department of Labor and State Employment Offices would be equal to such a task. Then, assuming that defendants can show the general availability of domestic workers capable of performing the work plaintiff is seeking, *i. e.* teaching political science, plaintiff should be afforded an opportunity to impeach such data by showing that available jobs for which he is peculiarly qualified do exist. On remand, the defendant may utilize a procedure which they believe will adequately allow the question of plaintiff's alleged entitlement to third preference status to be fairly considered. *See* Secretary of Labor v. Farino, 490 F.2d 885, 892 (7th Cir. 1973). Any challenge to such procedures should await further administrative action.

A remaining issue concerning plaintiff's application is that of his intended place of residence. As noted, on his initial application he listed Charlottesville, Virginia, and his application was accordingly processed for the 5 states in Region III; however, when he appealed this decision he stated that he was willing to relocate anywhere in the United States. The question is whether on remand the plaintiff is entitled to have his application processed by the Office of Manpower Administration in the ten regions established for this purpose. *See* 29 C.F.R. § 60.1. Defendants have not addressed this issue and the court is unaware of the extent of the burden which would be imposed on the Department of Labor by requiring nationwide processing of plaintiff's application. Although the pertinent regulations, 29 C.F.R. §§ 60.3, 60.4, speak in terms of certification occurring in the "area of the alien's intended residence," the issue posed by plaintiff's request is not addressed. In addition, the court is not aware of any restriction on an alien submitting applications in each of the regions established by the Secretary. The court is not prepared at this time to decide whether a nationwide general survey of the labor market should be undertaken in response to plaintiff's application, but rather, merely directs that the defendants respond to plaintiff in this regard and apprise him as to whether his application will be considered on a nationwide basis and/or whether he should submit his application to the ten regional offices.

Accordingly, for the reasons stated, this action is remanded to the Regional Manpower Administration for further proceedings not inconsistent with this opinion.