**Tessie WITT and Nassar Ramin Bral, Plaintiffs,**

v.

**The SECRETARY OF LABOR and the Assistant Regional Director for Manpower, Manpower Administration, Department of Labor, Defendants.**

Civ. No. 74–98–SD.

United States District Court,
D. Maine, S. D.

June 3, 1975.

674

Alfred Feingold, Liberty, Me., for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., Albert H. Ross and Nicholas Lanzza, U. S. Dept. of Labor, Boston, Mass., for defendants.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Plaintiffs Tessie Witt and Nassar Ramin Bral seek review of a decision of the Secretary of Labor denying an application for alien employment certification pursuant to Section 212(a)(14) of the Immigration and Nationalization Act, 8 U.S.C. § 1182(a)(14) ("the Act"). Having exhausted their administrative remedies, plaintiffs have brought the present action in which they request, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, a declaratory judgment that the Secretary's decision was arbitrary, an abuse of discretion and contrary to law, and a judgment ordering defendants to issue the requested certifica-

tion. The parties have filed cross-motions for summary judgment, and the matter has been submitted for the Court's determination on the basis of the administrative record, the pleadings, and the written and oral arguments of counsel. The Court holds that, in denying certification, the Secretary did not abuse the discretion vested in him by Section 212(a)(14); nor was his action arbitrary or contrary to law.

### I

Plaintiff Bral is an alien, a native of Iran and a citizen of Israel, who was admitted to the United States as a nonimmigrant visitor on November 30, 1971, and whose status was thereafter adjusted to that of a nonimmigrant student on January 31, 1972. He attends the University of Maine and presently resides in Augusta, Maine. Prior to coming to the United States, Bral served a five-year apprenticeship as a hairdresser in Tehran. Since coming to the United States, he has been licensed by the State Board of Cosmetology to practice hairdressing and beauty culture in the State of Maine.

Plaintiff Witt owns and operates a hairdressing and beauty salon in Augusta, known as "Tessie's Hair Fashions." She presently employs six female hairdressers. While a student, Bral has worked for Mrs. Witt on a part-time basis. Asserting that many women prefer a male hairdresser and that a male operator will be a valuable economic asset to her business, Mrs. Witt desires to retain Bral as a permanent employee at her beauty salon.

On or about March 20, 1974, Mrs. Witt submitted a request to the Department of Labor that the defendant Secretary, pursuant to Section 212(a)(14) of the Act, certify Bral for immigration into this country as a sixth preference permanent immigrant under Section 203(a)(6) of the Act, 8 U.S.C. § 1153(a)(6)[1], for the purpose of being

---

1. Section 203(a)(6) of the Act provides for the availability of sixth preference visas

" . . . to qualified immigrants who are capable of performing specified skilled or un-

employed by Mrs. Witt as a hairdresser and stylist in her Augusta beauty salon. *See* 29 CFR § 60.3(c), (e) and (f). In support of her application, Mrs. Witt stated that she wished to employ Bral because "male hairdressers and stylists are not available in the Maine, Augusta area"; that she has unsuccessfully sought a male hairdresser; that there are only four employed male hairdressers in the Augusta area; and that since many women prefer male hairdressers, a male operator would permit her to attract new clientele and increase her business. She further stated that "[i]f it were only a question of employing another hairdresser, I could hire one from the pool of unemployed female operators immediately."

Section 212(a)(14) provides for exclusion from the United States of:

Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

On March 28, 1974, a Department of Labor Regional Manpower Administration certifying officer at Boston denied the requested certification, *see* 29 CFR § 60.4(a), upon the ground that "[a]vailable job market information will not warrant a certification of unavaila-

bility of workers in the U.S. who are able, willing, and qualified." The certifying officer stated two reasons for the denial: first, that "[t]he Maine Employment Security Division has advised that qualified resident workers are available"; and, second, that "Title 29, CFR, 60.6(e) provides that a job offer will be deemed to adversely affect the wages and working conditions of U.S. workers where there is discrimination with regard to sex." Regulation 60.6(e) provides in pertinent part that:

Prospective employment offered in accordance with § 60.3(c) will be deemed to adversely affect "wages" or "working conditions" of American workers within the meaning of section 212(a)(14) of the Act unless it appears:

(e) that such employment will not involve any discrimination with regard to race, creed, color, national origin, age, or sex . . . .

Before denying certification, the certifying officer had been advised by the Maine Department of Manpower Affairs, Employment Security Commission, *see* 29 CFR § 60.3(c), that a search of its local office active file revealed three available cosmetologists (concededly female), who had been contacted by Mrs. Witt but "were not hired or considered suitable for various reasons." The Maine Department of Manpower Affairs also advised that there was a demand for, and a shortage of, male hairdressers in the State of Maine.

Plaintiffs sought review of the certifying officer's decision by the defendant Assistant Regional Director for Manpower at Boston. *See* 29 CFR § 60.4(b) and (c). On July 2, 1974, the reviewing officer affirmed the certifying officer's denial of labor certification on the ground that the requirement of Regula-

---

skilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States."

Section 203(a)(8) of the Act, 8 U.S.C. § 1153(a)(8), further provides that a labor

certification pursuant to Section 212(a)(14) of the Act is a prerequisite to the granting of such a perference visa. *See also* 29 CFR § 60.1(a).

tion 60.6(e) that the proposed employment does not discriminate with regard to sex "is not supported by the record and available labor market information." Pursuant to 29 CFR § 60.4(c), this determination was final. On August 20, 1974, plaintiffs instituted the present suit.

## II

Plaintiffs challenge the Secretary's refusal to grant the requested certification on three grounds [2]:

■ First, plaintiffs attack Regulation 60.6(e) promulgated under Section 212(a)(14)(B) of the Act. They argue that the Secretary exceeded his statutory authority by enacting a regulation banning sex discrimination pursuant to a statute which does not prohibit "discrimination" but proscribes only the employment of aliens which will adversely affect the "wages" or "working conditions" of American workers. In evaluating this contention, it should be kept in mind that the enforcing agency's interpretation of a statute is entitled to great deference. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

■ The legislative history of Section 212(a)(14) [3] makes clear that one of Congress' primary goals in enacting the statute was to protect the American labor market and the wages and working conditions of American workers. *See, e.g., Digilab, Inc. v. Secretary of Labor,*

*supra* note 2, 495 F.2d at 326; *Pesikoff v. Secretary of Labor, supra* note 2, 501 F.2d at 761; *Ozbirman v. Regional Manpower Administrator, supra* note 2, 335 F.Supp. at 471. Congress has recognized, in a variety of contexts, that discriminatory employment practices have an adverse impact upon the "working conditions" of American workers. Such practices are made expressly unlawful by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2, and discrimination by employers and unions constitutes an unfair labor practice under Sections 8(a)(1) and (b)(1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (b)(1). *United States Packinghouse Food & Allied Workers Int. v. NLRB*, 135 U.S. App.D.C. 111, 416 F.2d 1126 (1969) (employer discrimination); *Local Union No. 12, United Rubber, C., L. & P. Workers v. NLRB*, 368 F.2d 12, 17 (5th Cir. 1966), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967) (union discrimination). Moreover, in 1965, Section 202(a) of the Immigration and Nationality Act, 8 U.S.C. § 1152(a) was amended to specifically prohibit discrimination in the issuance of an immigration visa on the basis of sex. Clearly, the prohibition against sex discrimination in Regulation 60.6(e) falls squarely within the Secretary's authority under Section 212(a)(14) to deny labor certifications which adversely affect "working conditions" of American workers, and

---

2. Although in their brief defendants argued that the Secretary's determination is not subject to judicial review under the Administrative Procedure Act and that plaintiffs lack standing to maintain the action, at oral argument they conceded that this Court may reach the merits of plaintiffs' challenge to the Secretary's action. *See, e. g., Digilab, Inc. v. Secretary of Labor*, 495 F.2d 323 (1st Cir.), *cert. denied*, 419 U.S. 840, 95 S.Ct. 70, 42 L.Ed.2d 67 (1974); *Pesikoff v. Secretary of Labor*, 163 U.S.App.D.C. 197, 501 F.2d 757, 759–61, *cert. denied*, 419 U.S. 1038, 95 S.Ct. 525, 42 L.Ed.2d 315 (1974); *Ratnayake v. Mack*, 499 F.2d 1207, 1209–10 (8th Cir. 1974); *Reddy, Inc. v. United States Department of Labor*, 492 F.2d 538, 542–45 (5th

Cir. 1974); *Secretary of Labor of United States v. Farino*, 490 F.2d 885, 888–89 (7th Cir. 1973); *Ozbirman v. Regional Manpower Administrator*, 335 F.Supp. 467, 470–71 (S. D.N.Y.1971). *See also Sierra Club v. Morton*, 405 U.S. 727, 733, 92 S.Ct. 1361, 31 L.Ed. 2d 636 (1972); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Assn. of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins*, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

3. *See, e. g.,* S.Rep.No.748, 89th Cong., 1st Sess., 15 (1965), U.S.Code Cong. & Admin. News, p. 3333; H.R.Rep.No.745, 89th Cong., 1st Sess., 14 (1965).

reasonably effectuates the Congressional objective of protecting the American labor market against alien competition which may prevent American workers from achieving their maximum employment potential.

■ Plaintiffs next argue that even if Regulation 60.6(e) is valid, the Secretary's denial of Bral's certification constituted an abuse of discretion. The contention is that because some women prefer a male hairdresser and the hiring of a male operator would increase Mrs. Witt's business, sex, in the present circumstances, is a bona fide occupational qualification reasonably necessary for the normal operation of Mrs. Witt's beauty salon, and hence discrimination on the basis of sex is permissible. Plaintiffs point to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(e), which permits discrimination in employment on the basis of sex where sex is a bona fide occupational qualification.[4] But, as the Court of Appeals for the Fifth Circuit has noted in the Title VII context, customer preference does not constitute a basis for concluding that sex is a bona fide occupational qualification reasonably necessary for the normal operation of a business or enterprise. In *Diaz v. Pan American World Airways, Inc.,* 442 F.2d 385 (5th Cir. 1971), the court held that the fact Pan American's passengers overwhelmingly preferred to be served by female stewardesses could not justify its refusal to employ male stewards:

> While we recognize that the public's expectation of finding one sex in a particular role may cause some initial difficulty, it would be totally anomalous if we were to allow the prefer-

ences and prejudices of the customers to determine whether the sex discrimination was valid. *Id.* at 389.

■ Since customer preference is not a basis for establishing a bona fide occupational qualification, the Secretary did not err in concluding that the issuance of a labor certification would involve sex discrimination in violation of Regulation 60.6(e).

■ The plaintiffs also contend that the cosmetologists located by the Maine Department of Manpower Affairs in the Augusta area were not, within the meaning of Section 212(a)(14), "qualified" to perform the job which Mrs. Witt seeks to fill. It is the plaintiffs' position that being a male is a requirement which Mrs. Witt views as necessary for the most effective performance of the job, and she is therefore not obligated to accept operators who do not meet this condition. The contention is without merit. In the exercise of his discretion, the Secretary could properly conclude that Mrs. Witt's preference for a male operator was not a legitimate consideration which he was required to recognize in determining whether the available cosmetologists were "qualified." As the Court of Appeals for the District of Columbia has observed,

> It is well within the Secretary's discretion to ignore employer specifications which he deems, in accordance with his labor market expertise, to be irrelevant to the basic job which the employer desires performed. *Pesikoff v. Secretary of Labor, supra,* 501 F.2d at 762.

See also *Ozbirman v. Regional Manpower administrator, United States Department of Labor, supra,* 335 F.Supp. at

---

4. Plaintiffs also argue that since the employment discrimination prohibition of Title VII applies only to employers who have 15 or more employees, *see* 42 U.S.C. § 2000e(b), the Secretary abused his discretion under Regulation 60.6(e) because Mrs. Witt has only six employees at her establishment. There is no merit in this contention. Clearly, Regulation 60.6(e), like Section 212(a)

(14) of the Act upon which it is based, applies to a labor certification sought on behalf of an alien seeking to enter the United States, regardless of the number of persons employed by the employer seeking the certification. *Cf.* 42 U.S.C. §§ 2000a(b), 2000b(a), 2000c(c), 2000d; 42 U.S.C. § 1982. *See also Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

473–74.[5] It is also evident that if the Secretary were to treat as relevant an employer's personal preference for a male employee, the door would be open for an employer, by misrepresentation, to frustrate the purpose of the regulation. This Court agrees with the *Pesikoff* court that the "Secretary has discretion to protect the American labor market against such employers with prophylactic procedures such as the employer personal preference disposition he here made." *Pesikoff v. Secretary of Labor, supra,* 501 F.2d at 763.[6]

■■ The final ground upon which plaintiffs contend that the Secretary's determination was erroneous is that although the certifying officer found that the available market data indicated there were "qualified resident workers . . . available," he failed to make any finding, as required by Section 212(a)(14) of the Act, that such workers were "able" and "willing" to accept the proposed employment. The short answer to this contention is Mrs. Witt's own admission in the affidavit submitted in support of her application that she was only interested in hiring a male cosmetologist and that "if it were only a

question of employing another hairdresser, I could hire one from the pool of unemployed female operators immediately." Moreover, even if there were insufficient evidence in the record to support a finding by the Secretary that the three female cosmetologists who were available in the Augusta area were "able" and "willing" to work for Mrs. Witt, it is well established that the burden of rebutting the statutory presumption that aliens should not be permitted to enter the United States for the purpose of performing labor is on the alien or his prospective employer to prove that there is no qualified and available domestic worker able and willing to work for the employer. *Pesikoff v. Secretary of Labor, supra,* 501 F.2d 761–62. See also *Digilab, Inc. v. Secretary of Labor, supra,* 495 F.2d at 326.

### III

Plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is granted; and judgment will be entered affirming the decision of the defendant Secretary and dismissing the complaint.

It is so ordered.

5. "The Secretary has determined that there are sufficient workers in the United States who are available and qualified for the position sought by plaintiff. Nothing in the working or legislative history of this statute indicates that the Secretary should depart from a generalized inquiry into whether the above threshold requirement has been met. While it may be true that some aliens will be denied labor certification when their employment background is superior to that of workers in the United States, it is also obvious that further sub-classes within the tailor category would erode the purposes of the statute by denying positions to workers who meet the threshold qualifications." *Id.* at 473.

"The labor certification procedure was not designed to cater to the personal quirks of an employer . . . ." *Id.* at 474.

6. Plaintiffs' reliance upon *Digilab, Inc. v. Secretary of Labor, supra,* is misplaced. It is true that in *Digilab* the Court of Appeals

stated that the Secretary "should not have the privilege of determining the qualifications of any particular applicant for the job to be filled." 495 F.2d at 326. In that case, however, the employer was seeking a highly specialized type of electrical engineer having unique qualifications. The court held that the Secretary was not warranted in denying certification upon the basis of the mere conclusory statement that some 200 electrical engineers are available, since " '[e]lectrical engineers' in this age of intense specialization is far too generic a term in determining whether any of them are qualified in the particular field required by Digilab." *Id.* at 326. In the present case, it is not disputed that the position Mrs. Witt seeks to fill is that of a "hairdresser," that qualified hairdressers are available, and that being "a male" is not necessary for the performance of the job. *Cf. Pesikoff v. Secretary of Labor, supra,* 501 F.2d at 764; *Ozbirman v. Regional Manpower Administrator, supra,* 335 F.Supp. at 473–74.