**George W. SAYLOR, Jr., Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.**

**No. 83–1314.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1983.

Decided Dec. 21, 1983.

---

[*] The Honorable Walter E. Hoffman, Senior District Judge for the Eastern District of Virginia, is sitting by designation.

**2.** This question was left open in *Russello.* —— U.S. at —— n. 3, 104 S.Ct. at 304 n. 3.

Gerard D. Eftink, Deas, Van Hooser & Olsen P.C., Kansas City, Mo., for petitioner.

Raymond W. Fullerton, Asst. Gen. Counsel, Litigation Div., Dept. of Agriculture, Washington, D.C., for respondent.

Before PELL and CUDAHY, Circuit Judges, and GRANT, Senior District Judge.*

CUDAHY, Circuit Judge.

■ George W. Saylor, Jr., petitions for review of a United States Department of Agriculture ("USDA") determination that he sold livestock at false weights and charged commissions greater than agreed upon in violation of the Packers and Stockyards Act (the "Act"), 7 U.S.C. §§ 181 *et seq.* The USDA imposed a $10,000 civil penalty and suspended Saylor as a registrant under the Act for eight months. This court has jurisdiction to review the USDA's decision under 28 U.S.C. § 2342. Because, as detailed below, we agree with Saylor that the USDA did not adequately explain the basis for its decision, we remand the case for further proceedings.[1]

■ The legitimacy of an adjudication by an administrative agency depends to a great extent on the availability of effective judicial review. *See Crowell v. Benson,* 285 U.S. 22, 48–54, 52 S.Ct. 285, 291–93, 76 L.Ed. 598 (1932). The Administrative Procedure Act (the "APA") recognizes the importance of judicial review when it provides that agencies must explain the basis for their decisions, "on all material issues of fact, law, or discretion ...." 5 U.S.C. § 557(c)(3)(A). The Supreme Court has instructed us to review agency decisions only on the basis of the reasons given in the agency's order or opinion. *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). "Even if the evidence in the record, combined with the reviewing court's understanding of the law, is enough to support the order, the court may not uphold the order unless it is sustainable on the agency's findings and for the reasons stated by the agency." 3 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 14.29 at 128 (2d ed. 1980).

■ The USDA accused Saylor of arbitrarily raising the weights of cattle he purchased for his customers. Apparently, Saylor's customers place orders for cattle which he purchases for them at market, charging a commission of 25 cents per hundred pounds. In the fourteen transactions involved in this litigation, the weight of the cattle billed to the customers exceeded the weight of the cattle purchased by Saylor at the market, sometimes by very little, but at other times by more than three percent. Further, Saylor collected commissions that exceeded the allegedly agreed upon 25 cents per hundred pounds.

The USDA did not believe Saylor's explanation of the undisputed discrepancy in the weights. Saylor claims that his usual practice was to bring the cattle he purchased at the market to his stockyard in Pittsfield, Illinois, before sending them to his customers. At his yard, he contends, he inspected them for uniformity, defects and breed, and substituted cattle from his inventory for

---

1. Because of our resolution of the case, it is not necessary to reach Saylor's contention that the decision is not supported by substantial evidence. We note, however, his claim that the investigation and hearing did not afford due process. He supports this claim with arguments directed at the circumstantial evidence relied upon by the USDA and the hearsay nature of much of the testimony at the hearing. These aspects, he claims, made it impossible for him to present a meaningful defense. We do not agree that the use of circumstantial evidence and hearsay testimony amounted to a violation of due process in this case. However, the weight to be accorded this evidence is less than if it had been direct, non-hearsay and highly probative.

cattle in the purchased lot when he thought such substitution would better serve his customers' needs. The substituted cattle were usually heavier than those removed, thereby increasing the weight of the entire load in each of the transactions. In fact, at least six customers testified that they were aware of the practice and approved of it. At least one of these customers testified that he observed Saylor sort the cattle at the Pittsfield yard in a transaction challenged here.

The USDA concluded that Saylor did not sort the cattle and that the added weight in all of the transactions was an arbitrary amount computed solely to increase the selling price. In at least eleven of the fourteen transactions under review, the USDA concluded that the cattle were shipped directly from the point of purchase to the customer. The USDA apparently based this conclusion on the truckers' trip sheets and shipping invoices, which usually did not show a stop at Saylor's yard. Further, the truckers billed for shipments at the original weight of the cattle purchased at market and not for any additional weight allegedly added during the sorting process. However, the USDA does not explain why it apparently rejected the contrary, undisputed testimony of a number of ostensibly disinterested witnesses. Neither does the USDA explain why it rejected Saylor's sorting explanation with respect to the three loads which indisputably stopped at Saylor's yard. Nothing in the record explains why the USDA found the truckers' documents to be so reliable as to be fully dispositive with no discussion of other evidence. No testimony indicated that all truckers (or these truckers in particular) keep the sort of records the USDA assumes they do. We cannot uncritically accept the USDA's unsupported assertion that the truckers' invoices and trip sheets are conclusive in the face of the argument that the billing differences for the increased weight and travel to Pittsfield would have been *de minimis* and therefore the Pittsfield travel would not necessarily have been recorded.

The USDA also contends that the invoices and scale tickets prepared by Saylor and his employees "show signs that they were fabricated subsequent to the events themselves." However, the USDA points to nothing in the record to support this argument except an isolated incident of apparent misdating of an invoice. Further, the USDA does not answer Saylor's showing that often the invoices and payments were made so close together in time as to preclude any explanation other than that the trucker personally brought the invoice from Pittsfield to the customer after having stopped in Pittsfield with the cattle. The USDA bases its distrust of the scale tickets in part on the failure of those tickets to be produced at the initial audit conducted by William Kostelecky of Saylor's business. However, it is unclear from the record whether Kostelecky requested this information. In any event, the USDA did not call Kostelecky to testify at the hearing. We recently approved the USDA's practice of drawing an adverse inference from a party's failure to call a potentially important witness. *See Mattes v. United States,* 721 F.2d 1125 at 1130 (7th Cir.1983). What is sauce for the goose is sauce for the gander, and we believe a like inference may be drawn here against the USDA.

We also find puzzling the finding by the USDA that the weight tickets do not show the actual weight of the cattle but instead reflect a "calculated weight" which includes an allowance for shrinkage of the cattle in transit. This admitted practice of taking a "pencil shrink" is condemned by the USDA as a blatant violation of the Act. However, the USDA also found that the cattle never stood on Saylor's scales. It is unclear to us how the USDA can contend that the cattle were not weighed at Saylor's yard while also arguing that Saylor violated the Act by inaccurately weighing the cattle. Perhaps the USDA means that the "pencil shrink" was just another arbitrary increment added over and above the other additions to the weight. In any event, the USDA's explanation is not clear enough for us to be confident of its precise meaning. Proper judicial review is difficult because of our uncertain-

ty about what facts the USDA actually found.

The questions surrounding the method of accounting for shrinkage in transit present another problem for review. The USDA appears to have concluded, as discussed above, that estimating the shrink factor, as Saylor admittedly did, constitutes a violation of the Act. Saylor claims that estimating and penciling in a shrink factor is a common practice among livestock dealers and is accepted by his customers. Several customers testified at the hearing that they were aware of the practice and approved of it. The USDA has not adequately explained its basis for an apparent blanket condemnation of what may be a widespread and arguably legitimate practice in the trade. The USDA may have good reasons for disapproving of this practice, but, under the circumstances of this case, it must clarify them.

In addition to the problems we have noted, there may be several other USDA conclusions for which there appears to be inadequate support. We are concerned about the lack of a clear statement of reasons— especially in light of the severe penalties imposed by the USDA.

In these circumstances we may remand the case to the agency for further proceedings or clarification of the order. *Cf. Secretary of Labor v. Farino,* 490 F.2d 885, 890–92 (7th Cir.1973). We recognize that we may not impose procedural requirements in excess of those demanded by the APA. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). However, the Supreme Court recently made clear that *Vermont Yankee* was not meant to abrogate the responsibility of agencies to "cogently explain" their decisions. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,* —— U.S. ——, 103 S.Ct. 2856, 2869–71, 77 L.Ed.2d 443 (1983). The USDA is required to give "an adequate explanation of the connection between the record before it and the choice it makes." *City Federal Savings & Loan Ass'n. v. Fed-*

*eral Home Loan Bank Bd.,* 600 F.2d 681, 688 (7th Cir.1979) *quoted in Illinois Central Gulf Railroad v. Interstate Commerce Comm'n,* 717 F.2d 408, 412 (7th Cir.1983). Hence, we admonish the USDA to carefully examine the record in this case and to give clear and cogent reasons for whatever result it reaches on remand.

Because the USDA failed to explain adequately the reasons for finding petitioner George W. Saylor, Jr., in violation of the Act, the case is remanded to the USDA for further proceedings in accordance with this opinion.

So ordered.