Diego M. **Songao**, Crisencia Burch, Maria Didonato, and Francisco Songao, heirs of Serafina M. Songao, deceased, Plaintiffs/Appellants,

v.

**Commonwealth** of the Northern Mariana Islands, Defendant/Appellee.
Appeal No. 93-028
Civil Action No. 90-0165
October 5, 1994

Argued and Submitted March 8, 1994

Counsel for appellants: Eric S. Basse, Saipan (Office of James H. Grizzard).

Counsel for appellees: Douglas H. Strand, Assistant Attorney General, Saipan.

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ, Justice, and KOSACK, Special Judge.

VILLAGOMEZ, Justice:

Diego Songao, Crisencia Burch, Maria Didonato, and Francisco Songao (collectively the "Songaos"), appeal a Superior Court decision remanding a Land Commission determination of ownership issued in favor of the Commonwealth government. The trial court concluded, after review, that: (1) the Land Commission violated the Songaos' rights to procedural due process, and (2) the Land Commission determination that the Commonwealth government owned the land at issue was not supported by substantial evidence.

The Songaos claim ownership of Lot 3210 in Finagtan, Rota, based on a land exchange between two private individuals. Although the trial court stated that there was "ample testimony that an exchange did occur between Fintano and Francisco,[1] whereby the latter received the Finagtan property," the court decided that "this evidence should not be used to bolster the claims of the [Songaos] in the proceedings before this court."[2] The trial court remanded the matter to the Land Commission for further evidentiary hearings.

## ISSUE AND STANDARD OF REVIEW

 The Songaos present the substantive issue of whether the trial court erred in failing to find the Songaos owners of Lot 3210. We do not reach this issue, however, because our decision turns on the preliminary procedural question of whether the court erred in remanding the case to the Land Commission.[3] Whether the

---

[1] The Songaos' predecessor in interest.

[2] *Songao v. Commonwealth*, Civ. No. 90-0165 (N.M.I. Super. Ct. Apr. 28, 1993) (opinion and orders at 22).

[3] Appellate courts generally deem orders remanding actions to administrative agencies for further proceedings to be interlocutory in nature and not appealable as final decisions. *See, e.g., Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990); 2 Charles H. Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE, § 8.12[1](c) (1985 & Supp. 1994). However, due to the unique nature of the Land Commission Act, this rule is inapplicable. The decision below was a "final judgment" for purposes of vesting appellate jurisdiction over this appeal from an erroneous decision in a quiet title action.

trial court may remand a case to the Land Commission under 2 CMC § 4249 is a question of law which we review de novo.

## FACTUAL AND PROCEDURAL BACKGROUND

During the Japanese occupation of Rota, Francisco Maratita, deceased ("Francisco"), owned a parcel of land in Papa'lada, Rota. At the same time, Fintano Taisacan, deceased ("Fintano"), owned a lot at Finagtan, presently identified as Lot 3210. Based on a purported exchange of these lots, Francisco's daughter Serafina M. Songao ("Serafina") filed a claim of ownership of Lot 3210 with the Land Commission.

The Land Commission issued a preliminary determination of ownership to Lot 3210 in favor of Serafina. The Land Commission subsequently reversed that decision and, on October 18, 1989, issued a determination of ownership in favor of the Commonwealth government.

On February 15, 1990, the Songaos, as Serafina's heirs, filed a complaint to quiet title in Superior Court. The complaint is an appeal from the Land Commission determination pursuant to 2 CMC § 4249, which provides:

> Any person who . . . claims an interest . . . . and who disagrees with the [Land Commission's] determination of ownership . . . may file for a review of the determination of ownership by filing a complaint in the [Superior Court] . . . . . The complaint shall be in the nature of a quiet title suit . . . . The complaint shall name as defendants all those persons known to the plaintiff who claim an interest in the land. A determination of ownership shall be upheld if it is supported by substantial evidence found in the record taken as a whole including the record before the Land Commission and such additional evidence as shall be admitted before the [Superior Court].[4]

The trial court reviewed the evidence upon which the Land Commission based its determination, as well as two affidavits submitted to the court. From this review, the court found "ample" evidence that "an exchange did occur between Fintano and Francisco, whereby the latter

---

[4] 2 CMC § 4249.

received the Finagtan property."[5] However, the court ruled that such evidence "should not be used to bolster the claims of the Plaintiffs in the proceedings before [the trial] court."[6] Thus, instead of quieting title in favor of the Songaos, based on the evidence taken as a whole, the trial court vacated the title determination to Lot 3210 and remanded the matter to the Land Commission "with instructions that the Land Commission be required to hold another, public, hearing, consistent with [the court's decision], for an opportunity to build a substantial documented record."[7]

The Songaos timely appealed the decision to remand the case to the Land Commission. They argue that the evidence before the trial court was sufficient to enable entry of judgment in their favor. We hold that the trial court erred by failing to enter judgment in favor of one of the parties, and should not have remanded the case to the Land Commission.

## ANALYSIS

 Where a statute establishes an administrative adjudicatory scheme, we look to that statute to determine the scope, if any, of judicial review of the agency's actions.[8] Here, the Land Commission Act of 1983 ("Act")[9] creates the Land Commission, charges it with the task of registering all land in the Commonwealth, and provides for judicial review of the Land Commission's land ownership determinations.

Two CMC § 4249 of the Act governs this appeal. That provision mandates that the Superior Court uphold a determination of ownership which it finds to be supported by substantial evidence "in the record taken as a whole."[10] The record "as a whole" comprises "the record

before the Land Commission and such additional evidence as shall be admitted before" the court.[11]

In the present case, the Superior Court reviewed the evidence on which the Land Commission based its decision, as well as additional evidence consisting of two affidavits. The court found that the Land Commission based its determination of ownership for Lot 3210 on "insufficient" relevant evidence.[12]

The Act does not expressly preclude the trial court from remanding to the Land Commission where, as here, the record taken as a whole does not support the Land Commission determination. The authority to remand in such instances has been deemed an inherent part of a court's power under other statutory schemes providing for judicial review of agency action.[13] In this case, however, the Act specifically provides that appeals of Land Commission determinations must be brought as quiet title actions, and directs the trial court to review the whole record, including any additional evidence that the court decides to admit. From our analysis of this language and the rest of the Act's text[14] and legislative history which follows, we conclude that the legislature intended: (1) 2 CMC § 4249 of the Act to provide for trial de novo of a Land Commission determination which has been appealed, and (2) where an ownership determination is not supported by substantial evidence, to authorize the court to reverse and enter judgment, based on the "record taken as a whole."

## I. The Text of the Land Commission Act

Two CMC § 4249 of the Act specifies that "[t]he complaint shall be in the nature of a quiet title suit."[15]

---

[5] *Songao, supra* note 2, opinion and orders at 22.

[6] *Id.*

[7] *Id.* at 23.

[8] 1 CMC § 9112(c). *See Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 735, 105 S. Ct. 1598, 1602, 84 L. Ed. 2d 643, 651 (1985) ("We begin . . . with the language of the statute").

[9] PL 3-79 (1983) (codified at 2 CMC § 4211 et seq.).

[10] 2 CMC § 4249.

[11] *Id.* (emphasis added).

[12] *Songao, supra* note 2, opinion and orders at 22.

[13] *See, e.g., Secretary of Labor v. Farino*, 490 F.2d 885, 891 (7th Cir. 1973) (discussing the judicial review provision of the federal Administrative Procedure Act); *accord Seo v. United States Dept. of Labor*, 523 F.2d 10, 13-14 (9th Cir. 1975).

[14] *Commonwealth Ports Auth. v. Hakubotan Saipan Enters., Inc.*, 2 N.M.I. 212, 224 (1991) (legislative intent is to be discerned by analyzing the statute as a whole, not just an isolated phrase) (citing *Office of the Attorney General v. Cubol*, 3 CR 64, 73 (D.N.M.I. App. Div. 1987)).

[15] 2 CMC § 4249. A quiet title action is defined as "[a] proceeding to establish the plaintiff's title to land by bringing into court an adverse claimant and there compelling [the

The section requires the plaintiff to name as defendants "all those persons known . . . who claim an interest in the land,"[16] not simply the adverse party or parties from the administrative proceeding. Additionally, the section specifies that the trial court should apply the procedures it utilizes "for processing and disposing of civil litigation."[17]

■ We interpret this text to direct the trial court to conduct a trial de novo in appeals from Land Commission determinations, reverse a determination where it is not backed by substantial evidence (just as the court is to affirm determinations supported by substantial evidence), and quiet title to the land in question, rather than remand the matter to the Land Commission. The legislative history of the Act confirms our conclusion.

## II. Legislative History

■ In construing legislation a court may, if necessary, consult legislative history.[18] Standing committee reports in particular, while not decisive, are highly persuasive indicia of legislative intent.[19] The most persuasive evidence, however, comes from conference committee reports, which represent "the final statement of terms agreed to by both houses"[20] of a legislature.

■ The Land Commission Act originated as House Bill 94 ("H.R. 94" or "bill") in the Third Commonwealth Legislature.[21] As passed initially by the House of Representatives, section 18 of H.R. 94[22] included the following provision: "A determination of ownership shall be upheld if it is supported by substantial evidence found in the record taken as a whole."[23]

H.R. 94 then moved to the Senate. The Attorney General's office submitted a letter, which the Senate Standing Committee on Judiciary, Government & Law attached to its final report.[24] The letter states, in part:

> Section 18 provides that administrative determinations of ownership shall be upheld by the courts if factual determinations are supported by "substantial evidence." It is obviously the intent of the draftsmen to confine judicial review to the administrative record made below by the land registration teams. *We would suggest that the Committee underline this notation by inserting the following phrase . . . between ". . . land" and "A determination . . .": "Judicial review shall be confined to the administrative record.*[25]

Tellingly, rather than adding the language suggested by the Attorney General's office, the Senate inserted a phrase to make the relevant sentence of H.R. 94 § 18, read as follows: "A determination of ownership shall be upheld if it is supported by substantial evidence found in the record taken as a whole[,] *including the record before the Land Commission and such additional evidence as shall be admitted before the Commonwealth Trial Court.*"[26]

The House conference committee which subsequently considered the bill accepted the Senate's amendment to section 18. The legislature then passed H.R. 94, as amended. The Governor signed it into law in 1983 as the Land Commission Act.

Unfortunately, we have no explanation for the Senate's addition of the language "including the record

---

adverse claimant] either to establish his [or her] claim or be forever after estopped from asserting it." BLACK'S LAW DICTIONARY 1249 (6th ed. 1990). As suggested by this definition, decisions in such actions are final and binding on the parties or their privies.

[16] 2 CMC § 4249.

[17] *Id.*

[18] A court may look to legislative history for guidance where the enacted text may reasonably be read in two ways, or where no single path of meaning clearly appears. 2A Norman J. Singer, STATUTES AND STATUTORY CONSTRUCTION § 48.01 (5th ed. 1992); *see also Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 369 n.5 (1990).

[19] Singer, *supra* note 18, § 48.06.

[20] *Id.* § 48.08.

[21] The bill was first introduced, but never acted upon, during the Second Commonwealth Legislature. H.R. Report No. 119 at 2, 3d N.M.I. Legis. (1983).

[22] Later codified as amended as 2 CMC § 4249.

[23] H.R. Report No. 94 § 18, 3d N.M.I. Legis. (1983).

[24] *See* Sen. Report No. 240, 3d N.M.I. Legis. (1983).

[25] Letter from William S. Mount, Commonwealth Assistant Attorney General & Chief of Civil Division, to Ignacio K. Quichocho, Chairman, Commonwealth Senate Committee on Judiciary, Government & Law at 2 (May 17, 1983) (appended to S. Rep. No. 240) (emphasis added).

[26] H.R. Report No. 94 § 18, 3d N.M.I. Legis. (1983) (emphasis in original).

before the Land Commission and such additional evidence as shall be admitted before the Commonwealth Trial Court" because a typhoon destroyed the Senate records from the Third Commonwealth Legislature. Nevertheless, the surviving House records establish that the Senate introduced the amendment, and that it did so with knowledge of the Attorney General's previously quoted letter.[27] The acceptance of the Senate's amendment to the bill verifies the legislature's intent to provide for trial de novo of appeals from Land Commission determinations.[28]

■ In summary, although 2 CMC § 4249 of the Act does not expressly say so, the trial court is empowered to determine de novo whether a Land Commission determination of ownership should stand. As a procedural matter, the court should begin by examining the administrative record to establish whether substantial evidence supports the Land Commission's determination. If substantial evidence supports the agency's otherwise proper decision, the court should affirm. If the administrative record is deficient and the court is consequently unable to determine whether the Land Commission's determination should stand, the court should permit the parties to submit additional evidence. Thereafter, the court may affirm or reverse the Land Commission's determination, depending on whether the agency record, as supplemented, warrants affirmance or reversal.

## CONCLUSION

Under the Act, an appeal from a Land Commission determination of ownership takes the form of a quiet title action. In adjudicating such actions, the court considers all issues de novo and admits additional evidence it deems relevant. The court then adjudicates the matter accordingly, based on the record taken as a whole.

We **VACATE** the Superior Court's order and **REMAND** for the trial court to quiet title to Lot 3210 based on the evidence found in the record taken as a whole, including such additional evidence as the court may admit.

---

[27] *Cf.* SINGER, *supra* note 18, § 48.10 (noting that in determining legislative intent, federal courts consider statements of interested parties at congressional committee hearings to be helpful because records of the hearings are printed and distributed to members of Congress, and it is assumed, therefore, that the legislators "had knowledge of [the witnesses'] statements and of the evils described").

[28] *Cf. id.* § 48.10 ("If the legislature adopts an amendment urged by a witness, it may be assumed that the intent voiced was adopted by the legislature," especially if the witness's proposed amendment is incorporated into a standing committee report).

The Coastal Resources Management Act of 1983, PL 3-47 (1983) (codified as amended at 2 CMC § 1501 et seq.) ("CRM Act"), serves as a useful point of comparison here. This statute, like the Land Commission Act enacted the same year, provides for judicial review of decisions of the agency in question. The CRM Act, however, specifies that "[t]he standard for judicial review [of Coastal Resources Management Appeals Board decisions] is whether the decision is supported by substantial evidence on the record made before the Board, taken as a whole; the facts in question *are not subject to trial* de novo." 2 CMC § 1541(b) (emphasis added).